No. 25-5208

---

# In the United States Court of Appeals
# for the District of Columbia Circuit

---

REV. FATHER EMMANUEL LEMELSON,

*Plaintiff-Appellant,*

*v.*

SECURITIES AND EXCHANGE COMMISSION,

*Defendant-Appellee.*

---

On Appeal from the United States District Court
for the District of Columbia, No. 1:24-cv-2415-SLS

---

## PLAINTIFF-APPELLANT'S OPENING BRIEF

---

Russell G. Ryan
   *Counsel of Record*
John J. Vecchione
Andreia Trifoi
Mark Chenoweth
NEW CIVIL LIBERTIES ALLIANCE
4250 N. Fairfax Dr., Ste. 300
Arlington, VA 22203
(202) 869-5210
russ.ryan@ncla.legal

*Counsel for Plaintiff-Appellant*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES PURSUANT TO CIRCUIT RULE 28(a)(1)

A.  ***Parties and Amici***.  The Appellant in this case, who was the sole Plaintiff in the district court, is the Reverend Father Emmanuel Lemelson, a natural person.  The Appellee, which was the sole Defendant in district court, is the Securities and Exchange Commission, an agency of the federal government.  There were no *amici*, intervenors, or other parties in the district court and, as of September 3, 2025, the date on which this brief was filed, none have appeared in this Court.

B.  ***Ruling Under Review***. This appeal challenges the Memorandum Opinion and related Order entered by the district court on May 27, 2025, which together dismissed Appellant Lemelson's Amended Complaint and denied his motion for a preliminary injunction as moot. The Memorandum Opinion and Order are reproduced in the Joint Appendix ("JA") beginning at pages JA025 and JA051, respectively.

C.  ***Related Cases***.  There are no related cases as defined by D.C. Circuit Rule 28(a)(1)(C).  However, as described elsewhere in this brief, the parties have been engaged in other litigation against each other over the past several years in federal courts outside of the District of

i

Columbia, some of which might be considered "related" in a non-technical sense.

September 3, 2025

/s/ *Russell G. Ryan*
Russell G. Ryan

*Counsel for Plaintiff-Appellant*

## CORPORATE DISCLOSURE STATEMENT

None of the parties to this case in either the district court or in this Court are corporate entities.

September 3, 2025                    /s/ *Russell G. Ryan*

Russell G. Ryan

*Counsel for Plaintiff-Appellant*

# TABLE OF CONTENTS

**Page**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES PURSUANT TO CIRCUIT RULE 28(a)(1) ................................................. i

CORPORATE DISCLOSURE STATEMENT ........................................ iii

TABLE OF AUTHORITIES .............................................................. vi

GLOSSARY ...................................................................................... x

JURISDICTIONAL STATEMENT .................................................... 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ...................... 2

PERTINENT STATUTES AND REGULATIONS ................................. 3

STATEMENT OF THE CASE ............................................................ 4

    I. RELEVANT FACTS ................................................................... 4

        A.    SEC's Administrative "Follow-On" Prosecutions ................. 4

      B. SEC's 11-YEAR ADVERSARIAL RELATIONSHIP WITH LEMELSON ........ 8

    II. PROCEDURAL HISTORY IN THE COURT BELOW ................................. 12

SUMMARY OF ARGUMENT ........................................................... 13

ARGUMENT ................................................................................... 17

    I. THE DISTRICT COURT HAD SUBJECT MATTER JURISDICTION ........... 17

        A.    The Advisers Act Did Not Strip the District Court's Jurisdiction ......................................................................... 17

        B.    The District Court Had Supplemental Jurisdiction over Any Claims Affected by the Advisers Act Statutory Review Scheme ...................................................................... 30

    II. LEMELSON STATED A VALID CLAIM THAT SEC IS UNLAWFULLY DENYING HIM AN ARTICLE III ADJUDICATION ................................. 34

    III. LEMELSON STATED A VALID CLAIM THAT SEC'S ALJ ENJOYS EXCESSIVE TENURE PROTECTION IN VIOLATION OF ARTICLE II OF THE CONSTITUTION AND THE SEPARATION OF POWERS ................. 43

iv

IV. LEMELSON STATED A VALID CLAIM THAT SEC IS DEPRIVING HIM OF
        AN UNBIASED ADJUDICATOR AND THUS THE DUE PROCESS OF
        LAW ..................................................................................................47

CONCLUSION ...................................................................................56

CERTIFICATE OF COMPLIANCE ........................................................57

CERTIFICATE OF SERVICE ...............................................................58

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdelfattah v. U.S. Dep't of Homeland Sec.,*
  787 F.3d 524 (D.C. Cir. 2015)...............................................................42

*Alpine Sec. Corp. v. FINRA,*
  121 F.4th 1314 (D.C. Cir. 2024) ..........................................................7

*AMG Capital Mgmt., LLC v. FTC,*
  593 U.S. 67 (2021) ...............................................................................51

*Axon Enter., Inc. v. FTC and SEC v. Cochran,*
  598 U.S. 175 (2023) ..............1, 18, 19, 21, 22, 23, 24, 25, 27, 44, 45, 51

*Blinder, Robinson & Co. v. SEC,*
  837 F.2d 1099 (D.C. Cir. 1988)................................................49, 50, 51

*Bohon v. FERC,*
  92 F.4th 1121 (D.C. Cir. 2024) ...........................................................23

*Campbell v. Dist. of Columbia,*
  894 F.3d 281 (D.C. Cir. 2018)..............................................................42

*Caperton v. A.T. Massey Coal Co.,*
  556 U.S. 868 (2009) ...............................................................47, 53, 54

*Carr v. Saul,*
  593 U.S. 83 (2021) ...............................................................................27

*Cinderella Career & Finishing Schools, Inc. v. FTC,*
  425 F.2d 583 (D.C. Cir. 1970).............................................................55

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.,*
  561 U.S. 477 (2010) ........................................1, 18, 19, 46, 52

*Gabelli v. SEC,*
  568 U.S. 442 (2013) ....................................................................29, 51

*In re Murchison,*
  349 U.S. 133 (1955) ..............................................................................48

*Jarkesy v. SEC,*
  132 F.4th 745 (5th Cir. 2024)..............................................................42

*Jarkesy v. SEC,*
    34 F.4th 446 (5th Cir. 2022) .............................................................. 29

*Jarkesy v. SEC,*
    803 F.3d 9 (D.C. Cir. 2015) ............................................................. 15

*Kokesh v. SEC,*
    581 U.S. 455 (2017) ................................................................... 29, 51

*Liu v. SEC,*
    591 U.S. 71 (2020) .................................................................... 29, 51

*Lucia v. SEC,*
    585 U.S. 237 (2018) ................................................................... 29, 52

*McKinney v. Dist. of Columbia,*
    142 F.4th 784 (D.C. Cir. 2025) ........................................................ 42

*Media Matters for Am. v. FTC,*
    No. 25-1959, 2025 WL 2378009 (D.D.C. Aug. 15, 2025) ................. 21

*NIH v. Am. Pub. Health Ass'n,*
    No. 25A103, 2025 WL 2415669 (2025) ............................................ 39

*Ohio Bell Tel. Co. v. Pub. Utils. Comm'n of Ohio,*
    301 U.S. 292 (1937) ........................................................................ 47

*PAZ Sec., Inc. v. SEC,*
    494 F.3d 1059 (D.C. Cir. 2007) ......................................................... 6

*Royal Canin USA v. Wullschleger,*
    604 U.S. 22 (2025) .......................................................................... 31

*Saad v. SEC,*
    718 F.3d 904 (D.C. Cir. 2013) ........................................................... 6

*SEC v. Jarkesy,*
    603 U.S. 109 (2024) ................................... 2, 26, 35, 37, 38, 41, 42, 51

*SEC v. Lemelson,*
    138 F.4th 618 (2025) ....................................................................... 10

*Seila Law LLC v. CFPB,*
    591 U.S. 197 (2020) ........................................................................ 52

*Sessions v. Dimaya,*
    584 U.S. 148 (2018) .......................................................................... 7

*Steadman v. SEC*,
 603 F.2d 1126 (5th Cir. 1979) ........................................................26

*Sun Valley Orchards, Inc. v. Dep't of Lab.*,
 No. 23-2608, 2025 WL 2112927 (3d Cir. July 29, 2025) .....................35

*Texaco, Inc. v. FTC*,
 336 F.2d 754 (D.C. Cir. 1964) ........................................................55

*Tumey v. Ohio*,
 273 U.S. 510 (1927) ........................................................................47

*United States v. Arthrex*,
 594 U.S. 1 (2021) ...........................................................................52

*United States v. Smith*,
 440 F.2d 521 (7th Cir. 1971) ..........................................................20

*VHS Acquisition Subsidiary No. 7 v. NLRB*,
 759 F. Supp. 3d 88 (D.D.C. 2024) ..................................................46

*Williams v. Pennsylvania*,
 579 U.S. 1 (2016) .............................................................. 48, 53, 54

*Withrow v. Larkin*,
 421 U.S. 35 (1975) ........................................................................49

*Wulferic, LLC v. FDA*,
 No. 24-cv-1183, 2025 WL 2200923 (N.D. Tex. Aug. 1, 2025) ........ 15, 22

**Statutes**

15 U.S.C. § 203(f) ..............................................................................26

15 U.S.C. § 78d-1 ...............................................................................45

15 U.S.C. § 78y(a) ..............................................................................17

15 U.S.C. § 80b-13(a) .........................................................................17

15 U.S.C. § 80b-14(a) .........................................................................35

15 U.S.C. § 80b-3(f) ............................................................... 35, 36, 41

28 U.S.C. § 1331 .................................................................... 31, 34

28 U.S.C. § 1331, 1346 .......................................................................17

28 U.S.C. § 1367 .................................................................................31

28 U.S.C. § 1367(a) ....................................................................... 31

**Other Authorities**

Alexander L. Platt,
  *"Gatekeeping" in the Dark:  SEC Control Over Private Securities
  Litigation Revisited*,
  72 ADMIN. L. REV. 27 (2020) ................................................. 25

Gideon Mark,
  *SEC and CFTC Administrative Proceedings*,
  19 U. PA. J. CONST. L. 45 (2016) ........................................... 25

*In re Lemelson*,
  SEC Inv. Adv. Act. Rel. No. 6000 (Apr. 20, 2022) ........................ 35, 45

*In re Lemelson*,
  SEC Inv. Adv. Rel. No. 6755 (Oct. 23, 2024) ................................ 11, 46

James Fallows Tierney,
  *Reconsidering Securities Industry Bars*,
  29 STAN. J.L. BUS. & FIN. 134 (2024) ...................................... 7

**Constitutional Provisions**

U.S. Const. amend. V ................................................................. 47

U.S. Const. art. III, § 1 ........................................................... 34

U.S. Const. art. III, § 2 ....................................................... 31, 34

U.S. Const. art. III, § 2, cl. 1 ................................................... 17

# GLOSSARY

ALJ  Administrative Law Judge

SEC  Securities and Exchange Commission

# JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction under Article III, § 2 of the United States Constitution and 28 U.S.C. §§ 1331, 1346, 1367, 1651, and 2201. *See also Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 489-91 (2010); *Axon Enter., Inc. v. FTC and SEC v. Cochran*, 598 U.S. 175, 188-96 (2023) ("*Axon/Cochran*"). Among other things, the Complaint and Amended Complaint presented a case arising under the Constitution and laws of the United States and a controversy to which an agency of the United States was a party.[1]

This Court has jurisdiction under 28 U.S.C. § 1291 because this appeal seeks review of the district court's final order that dismissed the case in its entirety. The district court issued that final order on May 27, 2025, and Appellant filed his timely notice of appeal on May 30, 2025.

---

[1] As explained herein, the district court erroneously held that it lacked subject matter jurisdiction to adjudicate two of the claims asserted in the Amended Complaint.

1

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.    In light of the Supreme Court's decision in *Axon / Cochran*, which held that district courts have federal-question subject matter jurisdiction over constitutional challenges to the structure of non-jury agency administrative tribunals, and that the statutory review scheme set out in the Securities Exchange Act of 1934 (the "Exchange Act") does not displace that jurisdiction, did the district court err in holding that it lacked federal-question subject matter jurisdiction over Appellant Lemelson's claims that a pending administrative prosecution of him by Appellee Securities and Exchange Commission ("SEC") in the agency's non-jury administrative tribunal deprives him of his Seventh Amendment right to a jury trial and is barred by res judicata?

2.    In light of the Supreme Court's decision in *SEC v. Jarkesy*, 603 U.S. 109 (2024), which held that Article III and the Seventh Amendment to the Constitution prohibit SEC from using its non-jury administrative tribunal to penalize people for securities fraud, did the district court err in holding that Lemelson failed to state a viable claim that SEC's pending prosecution of him in its non-jury administrative tribunal deprives him of his right to an Article III adjudication?

2

3.    In light of relevant precedent and SEC's concession that the tenure protections enjoyed by the administrative law judge ("ALJ") assigned to superintend SEC's non-jury administrative prosecution of Lemelson do not comport with the separation of powers and Article II of the Constitution, did the district court err in holding that Appellant Lemelson failed to state a viable claim that those tenure protections violate Article II of the Constitution?

4.    Did the district court err in failing to distinguish *Blinder, Robinson & Co. v. SEC*, 837 F.2d 1099 (1988), which held that SEC's prior *ex parte* authorization of enforcement charges and prior adversarial litigation against a defendant in federal court did not preclude SEC from serving as the impartial adjudicator of a related non-jury "follow-on" administrative prosecution against the same defendant, and thus did not deprive the defendant of due process of law?  If not, should *Blinder* be revisited and reconsidered?

## PERTINENT STATUTES AND REGULATIONS

The constitutional provisions, statutes, and regulations pertinent to the appeal are set forth in the Addendum at the end of this brief.

3

## STATEMENT OF THE CASE

### I.     RELEVANT FACTS[2]

### A.     SEC's Administrative "Follow-On" Prosecutions

Section 203(f) of the Investment Advisers Act of 1940 (the "Advisers Act") empowers SEC, among other things, to bar or suspend a person from working in the securities industry if it finds, "on the record after notice and opportunity for hearing," that such a bar or suspension is "in the public interest" and that the person has been convicted of a serious crime or been enjoined by a court from, among other things, "engaging in or continuing any conduct or practice … in connection with the purchase or sale of any security."     JA006-07 (quoting 15 U.S.C. § 80b-3(f) (incorporating by reference § 80b-3(e)(4))).     Using this power and similar power conferred by a parallel provision of the Exchange Act, SEC initiates scores of such "follow-on" administrative prosecutions every year—sometimes more than two hundred.  JA007.  In the vast majority of these cases, the respondent is suspended or barred through a

---

[2] The facts recited are, except where otherwise indicated, based on the well-pled allegations in Lemelson's Amended Complaint, which were accepted as true for purposes of the district court's decision on appeal. JA029.

settlement or default because, unsurprisingly, relatively few such respondents have the resources and fortitude to defend themselves in a second battle launched against them by their government.  JA007.

In these SEC administrative follow-on prosecutions, the deck is stacked decidedly against the accused and in SEC's own favor.  JA007. The cases are ultimately adjudicated by the SEC commissioners themselves, sometimes after an initial decision is rendered by one of SEC's hand-picked ALJs.  JA007.  No jury or independent Article III judge is involved; SEC holds its staff prosecutors to only the featherweight "preponderance of evidence" burden of proof; and ordinary rules of evidence are inapplicable.  JA007.  Worse yet, SEC and its ALJs routinely decide follow-on cases through "summary disposition," JA007 (citing 17 C.F.R. § 201.250(b), (c))—a rough analog to summary judgment in federal courts—thereby depriving respondents of not only a jury trial but even the non-jury evidentiary hearing ostensibly required by both the Advisers Act and the Administrative Procedure Act.  JA007 (citing 15 U.S.C. § 80b-3(f); 5 U.S.C. §§ 554(b)(1), 554(c)(2), 556; Alexander Platt, *Is Administrative Summary Judgment Unlawful?*, 44 HARV. J.L. & PUB. POL'Y 239, 251-59 (2021); and Alexander Platt, *Unstacking the Deck:*

*Administrative Summary Judgment and Political Control*, 34 YALE J. ON REG. 439, 461-69 (2017)).

Courts have repeatedly instructed SEC to consider a range of case-specific factors when determining whether imposition of a bar or suspension in any given case is "in the public interest." JA008. As a practical matter, however, a bar or suspension is a foregone conclusion in virtually all SEC follow-on prosecutions. JA008. According to exhaustive empirical analysis by a leading securities law scholar, SEC imposes a bar or suspension in *all* follow-on prosecutions except the small handful in which SEC is unable to locate and serve the respondent, or where the predicate court injunction or criminal conviction is vacated. JA008 (citing Urska Velikonja, *Reporting Agency Performance: Behind the SEC's Enforcement Statistics*, 101 CORNELL L. REV. 901, 963, 967 (2016) and *In re Maher F. Kara*, SEC Initial Decision Rel. No. 979, 2016 WL 1019197, at *7 (Mar. 15, 2016)).

This Court has aptly described these industry bars as "the securities industry equivalent of capital punishment." *PAZ Sec., Inc. v. SEC*, 494 F.3d 1059, 1065 (D.C. Cir. 2007); *Saad v. SEC*, 718 F.3d 904, 906 (D.C. Cir. 2013) (quoting *PAZ*); *accord Alpine Sec. Corp. v. FINRA*,

121 F.4th 1314, 1340 (D.C. Cir. 2024) (Walker, J., concurring in the judgment in part and dissenting in part) ("From a broker's perspective," expulsion from the securities industry is "the 'corporate death penalty.'"), *cert. denied*, 2025 WL 1549780 (2025).    Justice Gorsuch recently expressed concern that the consequences of such bars and other putatively "civil" sanctions can often exceed those of criminal sanctions, in part because they "strip persons of their professional licenses and livelihoods." *Sessions v. Dimaya*, 584 U.S. 148, 184-85 (2018) (Gorsuch, J., concurring in part and concurring in judgment).    As one academic recently explained, "[i]t is a severe sanction to be driven out of your profession, perhaps among the gravest on the spectrum of seriousness for noncustodial and noncorporeal civil sanctions."    James Fallows Tierney, *Reconsidering Securities Industry Bars*, 29 STAN. J.L. BUS. & FIN. 134, 184 (2024).

7

### B. SEC'S 11-YEAR ADVERSARIAL RELATIONSHIP WITH LEMELSON

Lemelson is an ordained Greek Orthodox priest and investment fund manager. JA006. His investment research and analysis have been cited in a wide range of business media publications, including *The Wall Street Journal*, Bloomberg, CNBC, Fox Business News, *Fortune*, *Forbes*, *Barron's*, *Business Insider*, the *International Business Times*, Reuters, MarketWatch, and TheStreet.com. JA006.

SEC is an avowed and persistent nemesis of Lemelson. JA008. The agency has been in an openly aggressive and adversarial relationship with Lemelson for the past decade. JA008. It launched an intrusive and persecutive investigation against him in or around 2015 after a pharmaceutical company complained about Lemelson's withering public criticism of the company the year before. JA008. In September 2018, just months after Lemelson sent an open letter to Congress accusing SEC of incompetence and financial illiteracy, the agency sued Lemelson in the United States District Court for the District of Massachusetts, leveling false and incendiary allegations that Lemelson had engaged in market manipulation and other nefarious misconduct, including defrauding his

8

own investors. JA008-09. SEC's lawsuit demanded millions of dollars in penalties and forfeitures against Lemelson. JA009. Throughout the contentious Massachusetts litigation, SEC filed numerous pleadings, motions, and other documents that repeatedly maligned Lemelson and effectively demonized him as not just a fraudster but a religious charlatan too. JA009-10.

SEC also embarked on a years-long parallel media campaign to further demonize Lemelson with false and defamatory press releases and "litigation releases" about the case. JA009-12. These public releases, which remain on SEC's public website to this day, had the predictable effect of prompting media reports that repeated SEC's allegations. JA009, JA011.

SEC overwhelmingly lost its case before the Massachusetts federal jury and obtained only a small fraction of the relief it demanded, but the Massachusetts district court entered a final judgment in March 2022 that vaguely and summarily enjoined Lemelson "from violating Section 10(b) of the [Securities] Exchange Act and [SEC] Rule 10b-5 for a period of five years" while ordering him to pay a $160,000 civil penalty and no disgorgement. JA010 (quoting final judgment). In doing so, the court

9

rebuffed SEC's demand for a permanent, lifelong injunction and more than $2.6 million in penalties and disgorgement.  JA010.

SEC's Massachusetts federal court prosecution against Lemelson was hostile and contentious from the start—through discovery, numerous motions, trial, appeal, and an unsuccessful petition for certiorari.  JA009-10.  The litigation has continued even after Lemelson's unsuccessful appeal to the First Circuit and unsuccessful petition for certiorari to the Supreme Court, because Lemelson subsequently sought to recover his attorneys' fees and costs from SEC under the Equal Access to Justice Act ("EAJA").  JA009.  The Massachusetts district court denied Lemelson's EAJA motion in July 2024 in an opinion that began by noting the "long-running, hard-fought, [and] bitter" nature of the litigation. JA010.  The First Circuit recently vacated and remanded the matter, which remains pending in the Massachusetts district court.  *See SEC v. Lemelson*, 138 F.4th 618 (2025).

In April 2022, shortly after the Massachusetts district court entered its final judgment enjoining and penalizing Lemelson, SEC launched a related follow-on administrative enforcement prosecution that threatens to bar or suspend Lemelson from the securities industry, citing the court's

10

obey-the-law injunction as the statutory predicate for such further punishment. JA012. After Lemelson filed his complaint in the district court seeking to stop SEC's follow-on prosecution and thereafter asked SEC to stay its prosecution pending the district court's decision, SEC denied Lemelson's stay request and convened a hearing before one of its ALJs. *In re Lemelson*, SEC Inv. Adv. Rel. No. 6755, at 4 (Oct. 23, 2024).

As with many other SEC administrative follow-on prosecutions, despite previously pursuing adversarial litigation in court against Lemelson, SEC now purports to serve as the neutral and unbiased final adjudicator of the follow-on prosecution against him. JA012. Unlike some of those other follow-on prosecutions, however, SEC has continued to litigate contentiously against Lemelson in several directly related court proceedings, including this one and the above-referenced case on remand from the First Circuit to the Massachusetts district court, even as it purports to serve impartially as the final adjudicator of its follow-on prosecution. Most recently, in April of this year, SEC filed a separate case against Lemelson in the Massachusetts district court seeking to enforce a subpoena issued by the ALJ as part of SEC's administrative follow-on prosecution. *SEC v. Lemelson*, No. 25-mc-91207 (filed Apr. 30,

2025). (SEC voluntarily dismissed that ill-advised lawsuit in June 2025 and shortly thereafter indefinitely postponed the impending hearing before its ALJ.)

The SEC staff prosecutors in the follow-on proceeding against Lemelson are the same SEC attorneys who advised and represented SEC as the agency's lead counsel in the predicate Massachusetts federal court prosecution. JA012-13. Upon information and belief informed by established SEC practice, these SEC attorneys likely engaged in multiple *ex parte* attorney-client communications with SEC commissioners about Lemelson's case since at least September 2018. JA012-13 (citing SEC ENFORCEMENT MANUAL § 2.5 (November 28, 2017), *available at* www.sec.gov/divisions/enforce/enforcementmanual.pdf).

## II.    PROCEDURAL HISTORY IN THE COURT BELOW

Lemelson filed his Complaint in the district court in August 2024. JA002. After SEC denied his request to stay its administrative follow-on prosecution and convened a hearing before an ALJ, Lemelson amended his complaint and sought a preliminary injunction to stop the follow-on prosecution. JA003, JA005. In his Amended Complaint, Lemelson claimed that SEC's follow-on prosecution unconstitutionally deprives

him of an Article III adjudication, a jury trial, and due process of law in the form of an unbiased adjudicator.  JA016-19.  He also claimed that the ALJ assigned to superintend the follow-on prosecution enjoys excessive tenure protections that violate Article II of the Constitution, and that the follow-on prosecution is barred by res judicata.  JA019-21.  SEC opposed Lemelson's application for a preliminary injunction and moved to dismiss the amended complaint.  JA003.

On May 27, 2025, the district court issued its Memorandum Opinion and Order dismissing the complaint and denied Lemelson's application for a preliminary injunction as moot.  JA025-51.  The district court agreed with SEC that it lacked subject matter jurisdiction to hear Lemelson's jury-trial and res judicata claims, and that Lemelson failed to state viable due process, Article II, and Article III claims.  This appeal followed.

## SUMMARY OF ARGUMENT

Two years ago, in *Axon/Cochran*, the Supreme Court reiterated its prior holding that the statutory review scheme set out in the Exchange Act does not displace a district court's default federal-question jurisdiction to hear constitutional claims that challenge the structure of

13

SEC's non-jury administrative adjudications tribunal.  Last year, in *Jarkesy*, the Court further held that Article III of the Constitution and the Seventh Amendment prohibit SEC from using non-jury administrative adjudications to penalize respondents for securities fraud.

Consistent with these two recent precedents, Lemelson sued SEC in August 2024 to stop the agency from prosecuting him in its non-jury administrative adjudication tribunal.  In an Amended Complaint filed in December 2024, Lemelson claimed that, as in *Jarkesy*, SEC's non-jury administrative prosecution deprives him of his rights to an Article III adjudication and his Seventh Amendment right to a jury trial.  He also claimed that the multiple layers of tenure protection enjoyed by the ALJ assigned to superintend and initially decide SEC's administrative prosecution violate Article II of the Constitution, that SEC's administrative prosecution deprives him of his Fifth Amendment right to an impartial adjudicator, and that SEC's administrative prosecution is barred by res judicata.

The district court dismissed Lemelson's Amended Complaint in May 2025.  Joining what it described as a "chorus of post-*Jarkesy* district court decisions," JA034, the court first held that it lacked subject matter

14

jurisdiction to hear Lemelson's Seventh Amendment and res judicata claims.[3]  In so holding, the court mistakenly relied in part on the SEC ALJ initial decision that was ultimately set aside in *Jarkesy*.  The court also cited this Court's decision at an earlier stage of the same administrative proceeding against the same George Jarkesy and his firm, *Jarkesy v. SEC*, 803 F.3d 9 (D.C. Cir. 2015), a precedent effectively abrogated by *Axon/Cochran*.

The court then dismissed Lemelson's three remaining claims for failure to state a claim.  In dismissing Lemelson's Article III claim, the court relied primarily on *Atlas Roofing Company, Inc. v. Occupational Safety and Health Review Commission*, 430 U.S. 442 (1977), a case the Supreme Court criticized and severely limited in *Jarkesy*.  The court also dismissed Lemelson's Article II claim despite SEC's own concession that the statutory tenure protections enjoyed by SEC ALJs do not comport with the separation of powers and Article II of the Constitution.  Finally, in dismissing Lemelson's due process claim, the court relied primarily on

---

[3] *But see Wulferic, LLC v. FDA*, No. 24-cv-1183, 2025 WL 2200923, at *6-*8 (N.D. Tex. Aug. 1, 2025) (finding jurisdiction over Seventh Amendment claim).

this Court's decision in *Blinder, Robinson & Co. v. SEC*, 837 F.2d 1099 (D.C. Cir. 1988).

This Court should reverse the district court's dismissal and remand the case for further proceedings. The district court's decision cannot be squared with *Axon/Cochran* and *Jarkesy*. *Axon/Cochran* is dispositive in confirming the district court's subject-matter jurisdiction over all of Lemelson's claims, and *Jarkesy* is dispositive in confirming that SEC's non-jury administrative prosecution unlawfully deprives Lemelson of an Article III adjudication and a jury trial. SEC effectively conceded the merits of Lemelson's Article II tenure-protection claim, so the district court's dismissal was not only erroneous but premature. Finally, regarding Lemelson's due process claim based on SEC's lack of adjudicative impartiality, the Court should either distinguish and strictly limit its *Blinder* decision or reconsider and overrule that decision en banc.

16

# ARGUMENT

## I.   THE DISTRICT COURT HAD SUBJECT MATTER JURISDICTION

### A.   The Advisers Act Did Not Strip the District Court's Jurisdiction

Absent an applicable jurisdiction-stripping statute to displace it, there is no question the district court had subject-matter jurisdiction over Lemelson's entire case.  Lemelson's Amended Complaint presented a case arising under the Constitution and laws of the United States, U.S. Const. art. III, § 2, cl. 1, a controversy to which an agency of the United States was a party, *id.*, and a civil action against that agency, 28 U.S.C. § 1331, 1346.  Lemelson's case, therefore, presented a quintessential federal-question case.

The district court, however, found a jurisdiction-stripping statute in Section 213(a) of the Advisers Act.  That section allows any person "aggrieved by an order issued by [SEC]" to file a petition in a court of appeals seeking to modify or set aside the order.  15 U.S.C. § 80b-13(a).  But the Supreme Court has already held—*twice*—that the materially identical statutory review scheme set out in Section 25(a) of the Exchange Act, 15 U.S.C. § 78y(a), does *not* strip district courts of jurisdiction over

17

pre-enforcement structural constitutional challenges to agencies and their administrative adjudication tribunals.

It first did so in *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477 (2010), a case in which the investigative target of a quasi-governmental regulatory board claimed that the board's leaders were unconstitutionally appointed and protected from presidential removal.  Before reaching the merits of those constitutional claims, the Court addressed whether the district court had jurisdiction to consider the case notwithstanding the Exchange Act's statutory review scheme.  *Id.* at 489-91.  The government argued that this statutory review scheme stripped the district court of jurisdiction under *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), wherein the Court "fabricated" "a judge-made, multi-factor balancing test ... to ferret out whether the legislators who adopted [a statutory review scheme] harbored an implicit wish to oust district courts of jurisdiction in favor of agency proceedings." *Axon/Cochran*, 598 U.S. at 205 (Gorsuch, J., concurring) (cleaned up).

The Court squarely rejected the Government's jurisdiction-stripping argument.  It held that Exchange Act Section 25(a) "does *not*

expressly limit the jurisdiction that other statutes confer on district courts. *Nor does it do so implicitly*." 561 U.S. at 489 (citations omitted; emphasis added).

The Court unanimously reiterated that holding in *Axon/Cochran*, wherein the plaintiffs challenged the tenure protections of agency ALJs and claimed that agency adjudicative proceedings violated due process and the separation of powers. In these companion cases, the district courts had held that the statutory review schemes of the Exchange Act and the Federal Trade Commission Act implicitly stripped district courts of jurisdiction to consider the plaintiffs' claims due to the *Thunder Basin* test. *See* 598 U.S. at 184. In both cases, however, the Supreme Court again squarely rejected the jurisdiction-stripping argument, concluding that "the review schemes set out in the Exchange Act and the FTC Act do *not* displace district court jurisdiction over Axon's and Cochran's far-reaching constitutional claims." *Id.* at 185 (emphasis added).

Notwithstanding this repeat Supreme Court holding that the Exchange Act statutory review scheme and *Thunder Basin* do *not* strip district courts of jurisdiction to consider structural constitutional challenges to SEC and its adjudicative process, the district court held

19

that the Advisers Act's materially identical statutory review scheme *did* strip the court of its jurisdiction over two of Lemelson's claims—specifically his claims that SEC's administrative follow-on prosecution violates his Seventh Amendment jury-trial right and is barred by res judicata.  JA031-38.  In doing so, the district court said it was "join[ing] the chorus" of district courts that have declined to apply the reasoning of *Free Enterprise Fund* and *Axon/Cochran* to claims brought under the Seventh Amendment.  JA034 (citing cases).  But just as the Supreme Court in *Axon/Cochran* ultimately overruled five federal appeals courts (including this one) that had mistakenly interpreted the Exchange Act's statutory review scheme to strip district court jurisdiction, this Court should recognize that the current district court "chorus" is singing out of key.  To borrow a different metaphor from the late Justice Stevens, higher courts need to direct a change of course when "the parade is marching in the wrong direction." *United States v. Smith*, 440 F.2d 521, 527 (7th Cir. 1971) (Stevens, J., dissenting).

The district court's holding cannot be squared with *Free Enterprise Fund* and *Axon/Cochran*, and thus it should be reversed.[4]  Lemelson's jury-trial claim is materially indistinguishable from the constitutional claims at issue in *Free Enterprise Fund* and *Axon/Cochran*.  The plaintiffs in all three cases alleged federal-question subject matter jurisdiction and asserted "far-reaching constitutional claims" that were "fundamental, even existential." *Axon/Cochran*, 598 U.S. at 180, 185.  In Lemelson's case in particular, a favorable ruling on his Seventh Amendment claim would effectively prevent SEC from adjudicating *any* administrative follow-on prosecutions predicated on SEC-instigated court injunctions absent a jury-trial waiver by the respondent; without such consent, SEC would need to prove its entitlement to a securities-

---

[4] The same district court more recently reached the opposite conclusion in holding that the statutory review scheme of the Federal Trade Commission Act did *not* strip it of jurisdiction to issue a preliminary injunction in favor of a media company in a non-structural, pre-enforcement constitutional challenge to certain agency investigative demands. *Media Matters for Am. v. FTC*, No. 25-1959, 2025 WL 2378009, at *7-*14 (D.D.C. Aug. 15, 2025), *stay pending appeal denied*, 2025 WL 2434196 (D.D.C. Aug. 22, 2025).  The agency has since appealed that decision to this Court.  It is not easy to discern a meaningful legal distinction between that case and Lemelson's, nor to reconcile the widely disparate outcomes, especially given that SEC and FTC often argue that their respective statutes should be read *in pari materia*.

21

industry bar or suspension before a jury in an Article III court, just as *Jarkesy* now requires for other types of punitive SEC prosecutions. Success on Lemelson's res judicata claim would likewise prevent SEC from adjudicating *all* administrative follow-on prosecutions predicated on SEC-instigated court injunction where SEC, as here, failed to request that the court injunction include a securities-industry bar or suspension.

Indeed, Lemelson's jury-trial claim in particular presents a challenge no less structural than the tenure-protection, due process, and separation of powers claims presented in *Free Enterprise Fund* and *Axon/Cochran*, because it charges SEC with "wielding authority unconstitutionally in all or a broad swath of its work." *Axon/Cochran*, 598 U.S. at 189; *see also Wulferic, LLC v. FDA*, No. 24-cv-1183, 2025 WL 2200923, at *7 (N.D. Tex. Aug. 1, 2025) (district court had jurisdiction to consider Seventh Amendment jury-trial claim because it is "closely intertwined with Article III" and "necessarily presents a structural constitutional challenge, like those in *Axon* and *Free Enterprise Fund* that attack how the agency is wielding its authority"). "Given that equivalence, it would be surprising to treat [Lemelson's claim] here

22

differently from the one in *Free Enterprise Fund*" or the ones in *Axon/Cochran*. *Axon/Cochran*, 598 U.S. at 189.

Moreover, in all three cases, the relevant statutory review scheme was not even an available option for the plaintiffs because they were not yet challenging any final agency order but rather were challenging the process by which such a final order might (or might not) eventually materialize. In Lemelson's case, for example, SEC commenced its follow-on administrative prosecution more than three years ago but has issued no final decision from which he could seek judicial relief in a court of appeals. *Cf. Bohon v. FERC*, 92 F.4th 1121, 1123 (D.C. Cir.) (explaining that the statutory review schemes in *Axon/Cochran* "were *silent* about the district court's jurisdiction" because those plaintiffs "sued *before* there was an agency order to challenge" (emphasis in original)), *cert. denied*, 144 S. Ct. 2563 (2024). Even if SEC someday issues a final decision, that decision may be a favorable one that does not aggrieve Lemelson, in which case the statutory review scheme would never become available to him. In that event, his "here-and-now" constitutional injury, *Axon/Cochran*, 598 U.S. at 191 (quoting *Seila Law LLC v. CFPB*, 591 U. S. 197, 212 (2020))—suffered from being subjected to "unconstitutional

23

agency authority" in the form of "an illegitimate proceeding, led by an illegitimate decisionmaker," *id.* at 191 (quoting parties' briefs)—would be "impossible to remedy once the proceeding is over, which is when appellate review kicks in," *id.*

These similarities between Lemelson's case and both *Free Enterprise Fund* and *Axon/Cochran* are "really all it is necessary to know" to find subject matter jurisdiction. *Id.* at 182. Yet even the *Thunder Basin* factors point decidedly against jurisdiction-stripping.

First, precluding district court jurisdiction over Lemelson's claims could "foreclose all meaningful judicial review" of his claims. *Id.* at 186 (quoting *Thunder Basin*, 510 U.S. at 212-13).[5] As previously noted, just as in *Free Enterprise Fund* and *Axon/Cochran*, meaningful judicial review of Lemelson's constitutional claims would plainly be foreclosed if SEC were to issue a final order that does not "aggrieve" him, because he

---

[5] The district court erroneously read this factor as requiring Lemelson to demonstrate that precluding district court jurisdiction "would" (not just "could") foreclose all meaningful judicial review, effectively inverting the *Thunder Basin* test so that it strips jurisdiction whenever there is any plausible scenario in which subsequent judicial review might eventually become available. JA031. That error effectively converted *Thunder Basin*'s presumption *against* jurisdiction stripping into an almost irrebuttable presumption *in favor of* jurisdiction stripping.

would then be precluded from seeking any judicial review of that order.

Judicial review would also be forever foreclosed if Lemelson were to settle

with SEC before the agency issues any final decision, which is how SEC

concludes the overwhelming majority of its administrative prosecutions,

including follow-on prosecutions like the one against Lemelson.

Alexander L. Platt, *"Gatekeeping" in the Dark:  SEC Control Over Private*

*Securities Litigation Revisited*, 72 ADMIN. L. REV. 27, 46 (2020) ("the vast

majority of SEC enforcement actions are settled before trial, and as many

as half of them are settled before they are even filed"); Gideon Mark, *SEC*

*and CFTC Administrative Proceedings*, 19 U. PA. J. CONST. L. 45, 57

(2016) (noting that between 2002 and 2014, the SEC settled "about 98%"

of cases).

Second, Lemelson's claims in the district court were "wholly

collateral" to the merits of SEC's administrative follow-on prosecution

that might later get judicial review under the statutory review scheme.

*Axon/Cochran*, 598 U.S. at 186 (citing *Thunder Basin*, 510 U.S. at 212).

The sole question before SEC and its ALJ is whether, in light of the five-

year obey-the-law injunction imposed against Lemelson by the

Massachusetts district court in March 2022, it is "in the public interest"

25

to censure Lemelson or to bar or suspend him from the securities industry. *See* 15 U.S.C. § 203(f). In deciding that question, SEC typically applies a multi-factor inquiry that was first devised by the Fifth Circuit in *Steadman v. SEC*, 603 F.2d 1126, 1140 (5th Cir. 1979), *aff'd on other grounds*, 450 U.S. 91 (1981), but none of those factors has anything to do with jury trial rights, res judicata, or anything else Lemelson complained about in the district court.[6] Just as in *Free Enterprise Fund* and *Axon/Cochran*, no matter how SEC weighs the *Steadman* factors and no matter what SEC ultimately decides regarding appropriate sanctions (if any), the claims asserted in Lemelson's Amended Complaint would be exactly the same, and wholly collateral to SEC's decision. Neither SEC nor the district court articulated any coherent reason to conclude otherwise.

---

[6] These so-called *Steadman* factors bear a striking resemblance to the relevant factors for imposition of penalties, which the Supreme Court said in *Jarkesy* were factual questions for juries, 603 U.S. at 123-25. They include the egregiousness of the respondent's actions [that led to the predicate court injunction], the isolated or recurrent nature of the infraction, the degree of scienter involved, the sincerity of the respondent's assurances against future violations, the respondent's recognition of the wrongful nature of the conduct, and the likelihood that the respondent's occupation will present opportunities for future violations, with none of those factors being dispositive. 603 F.2d at 1140.

Finally, just as in *Free Enterprise Fund* and *Axon/Cochran*, the claims asserted in Lemelson's Amended Complaint were completely beyond SEC's expertise, or even its competence. Both *Free Enterprise Fund* and *Axon/Cochran* said in no uncertain terms that agencies have neither the expertise nor the competence to decide standard questions of administrative and constitutional law. *Axon/Cochran*, 598 U.S. at 188; *Free Enterprise Fund*, 561 U.S. at 491; *accord Carr v. Saul*, 593 U.S. 83, 92 (2021) ("this Court has often observed that agency adjudications are generally ill-suited to address structural constitutional challenges, which usually fall outside the adjudicators' areas of technical expertise" (citing *Free Enterprise Fund* and other cases)).

In concluding otherwise, the district court not only ignored these contrary Supreme Court holdings but also relied in part on cases subsequently abrogated by the Supreme Court. For example, it ironically cited an SEC ALJ decision that found "no merit" in a respondent's claim that SEC was denying him a jury trial in violation of his Seventh Amendment rights, JA036 (citing *John Thomas Cap. Mgmt. Grp.*, 2014 WL 5304908, at *6 (ALJ Oct. 17, 2014)), a decision SEC itself upheld six years later on administrative appeal, 2020 WL 5291417, at *27 (SEC

27

Sept. 4, 2020).  But that very SEC decision was the same one the Supreme Court ultimately set aside in *Jarkesy* when it held exactly the opposite with respect to jury trial rights.

The district court also noted that this Court "has even cited" the same ALJ decision in concluding that SEC is "fully capable" of considering claims about the fairness of its administrative proceedings. JA036 (quoting *Jarkesy v. SEC*, 803 F.3d 9, 28 (D.C. Cir. 2015)).  But to the extent this Court at the time may have relied on that ALJ decision as evidence of SEC's purported expertise and competence in deciding constitutional questions, such reliance is no longer sustainable in light of subsequent contrary Supreme Court holdings.  In any event, this Court's 2015 *Jarkesy* decision was substantially undermined, if not abrogated, by *Axon/Cochran*, which rejected the essence of this Court's rationale for holding that the district court lacked jurisdiction to hear that case.

SEC's lack of expertise in deciding constitutional and other questions untethered to securities law should also be evident from its lousy recent track record in litigating such questions.  In addition to getting the jury-trial question wrong in *Jarkesy* and the jurisdictional question wrong in *Axon/Cochran*, SEC has flunked many other non-

28

securities exams in the recent past, including questions concerning its applicable statute of limitations, *see Kokesh v. SEC*, 581 U.S. 455, 457, 461 (2017); *Gabelli v. SEC*, 568 U.S. 442, 447-49 (2013), questions concerning the equitable or punitive nature of disgorgement, *see Liu v. SEC*, 591 U.S. 71, 88 (2020); *Kokesh*, 581 U.S. at 464-65, questions concerning the Appointments Clause of the Constitution, *see Lucia v. SEC*, 585 U.S. 237, 241-49 (2018), and questions concerning the constitutionality of the tenure protections enjoyed by its ALJs, *see Jarkesy v. SEC*, 34 F.4th 446, 463-65 (5th Cir. 2022), *aff'd on other grounds*, 603 U.S. 109 (2024).

It should come as little surprise, moreover, that each of these SEC misinterpretations had the effect of aggrandizing the agency's power and discretion at the expense of civil liberties. Given SEC's dismal and self-interested track record on questions beyond its competence, the agency's adversaries should not be reduced to having their constitutional liberties dependent on the agency's demonstrated lack of expertise in deciding such matters.

### B.   The District Court Had Supplemental Jurisdiction over Any Claims Affected by the Advisers Act Statutory Review Scheme

Neither the district court nor SEC disputed the court's subject matter jurisdiction to adjudicate three of Lemelson's five claims—namely, his claims that SEC is violating due process by denying him an impartial adjudicator, violating Article III of the Constitution by depriving him of an Article III tribunal, and violating Article II of the Constitution by entrusting Lemelson's case to an ALJ who enjoys excessive protection from removal by the President.  Notwithstanding the district court's indisputable jurisdiction over the majority of Lemelson's claims, the court agreed with SEC that it should parse the Amended Complaint's individual component claims to determine which ones the court would or would not have jurisdiction over had each been pled as a standalone claim in isolation.  But that's not how subject matter jurisdiction works, especially where *all* the asserted claims are indisputably *federal* questions rather than state-law questions.

Article III of the Constitution vests in courts the judicial power to decide "cases" arising under the Constitution and laws of the United States, as well as "controversies" to which the United States is a party—

30

not individual "claims" alleged within those cases and controversies.  U.S. Const. art. III, § 2.   The U.S. Code likewise grants courts original jurisdiction over all "civil actions" arising under the Constitution or laws of the United States—not over individual "claims" alleged as component pieces of those civil actions.  28 U.S.C. § 1331.  Nothing in any of these jurisdictional grants suggests that a court having indisputable jurisdiction over a case, controversy, or civil action should nevertheless sever certain component federal claims and decline to exercise jurisdiction over them even as they continue to exercise jurisdiction over the remainder of the case.

The federal supplemental jurisdiction statute, 28 U.S.C. § 1367, further confirms this jurisdictional point.  That statute, which essentially codified longstanding principles of pendent jurisdiction, provides that where a district court has original jurisdiction over a "civil action," the court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  *Id.* § 1367(a).  *See generally Royal Canin USA v. Wullschleger*, 604 U.S. 22, 26-27, 31 (2025) (discussing history

and general application of supplemental jurisdiction). Here, the district court indisputably had jurisdiction over Lemelson's civil action, so it had supplemental jurisdiction over all closely related claims that formed part of the same constitutional case or controversy. Indeed, under well-settled principles of supplemental jurisdiction, the district court could have exercised jurisdiction to hear even closely related *state*-law claims over which *no* federal court could have *ever* asserted jurisdiction if they had been pled as standalone claims untethered to any related federal claims.

The district court and SEC faulted Lemelson for not citing any case law supporting this straightforward text- and logic-based proposition. JA037. But neither the district court nor SEC cited any case to support their atextual and illogical limitations on the jurisdictional grants in Article III and the U.S. Code. Neither of the two cases the district court cited mentioned the supplemental jurisdiction statute, nor did either case present a scenario in which the district court conceded it had jurisdiction to hear certain federal claims in a complaint but not the others. JA037 (citing *Elgin v. Dep't of Treasury*, 567 U.S. 1, 5 (2012) and *Vape Central Grp., LLC v. FDA*, No. 24-cv-3354, 2025 WL, at *5 (D.D.C. Feb. 27, 2025)). Both cases support the uncontroversial proposition that Congress may

"channel" certain types of claims into a statutory review scheme, but they are otherwise completely inapposite. They simply did not address the question of whether the supplemental jurisdiction statute, as its text plainly says, allows a court that has indisputable jurisdiction over a civil action to exercise that jurisdiction over all closely related claims that form part of the same case or controversy, including claims that, standing alone, would not have conferred jurisdiction.

Nothing in *Axon/Cochran*, nor in principles of judicial economy, remotely suggests that district courts must parse out the specific component federal claims asserted within an all-federal complaint and then exercise jurisdiction over only some of them but not others that are factually related, thus forcing litigants to proceed on separate tracks in two different venues where they can obtain prompt judicial review of some claims while having any judicial review of the others delayed and perhaps denied forever. The latter claims, being indisputably federal questions, deserve no less respect and attention from federal courts than they would if they were purely state-law claims over which the court would otherwise lack jurisdiction; after all, in the latter case, no federal

court could *ever* entertain the state-law tag-along claims were they not joined in a complaint with one or more federal claims.

## II. LEMELSON STATED A VALID CLAIM THAT SEC IS UNLAWFULLY DENYING HIM AN ARTICLE III ADJUDICATION

Neither SEC nor the district court disputed the court's jurisdiction to hear Lemelson's claim that SEC is depriving him of the Article III adjudication required by *Jarkesy*. The court nevertheless held that Lemelson failed to state a valid claim under Article III. JA038-42. That holding is wholly inconsistent with *Jarkesy* and must be reversed.

Article III of the Constitution vests "[t]he judicial Power of the United States ... in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." U.S. Const. art. III, § 1. That judicial power extends to "all cases, in Law and Equity, arising under [the] Constitution [and] the Laws of the United States," as well as to "Controversies to which the United States shall be a Party." *Id.* § 2; *accord* 28 U.S.C. § 1331 (federal question jurisdiction).

Article III judges "enjoy life tenure and salary protection, attributes that preserve an 'independent spirit' that is 'essential to the faithful performance' of their duty." *Sun Valley Orchards, Inc. v. Dep't of Lab.*,

34

No. 23-2608, 2025 WL 2112927, at *4 (3d Cir. July 29, 2025) (quoting The Federalist No. 78, p. 469 (Alexander Hamilton) (C. Rossiter ed. 1961)). "Because non-Article III tribunals lack these important qualities, Congress may not 'withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty.'" *Id.* (quoting *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. (18 How.) 272, 284 (1855)). In other words, the judicial power the Constitution vests in courts "cannot be shared with the other branches." *Jarkesy*, 603 U.S. at 127.

SEC's administrative follow-on prosecution of Lemelson is a case arising under the laws of the United States; SEC's charging document expressly said it was brought pursuant to SEC's authority under Section 203(f) of the Advisers Act, 15 U.S.C. § 80b-3(f). *In re Lemelson*, SEC Inv. Adv. Act. Rel. No. 6000 (Apr. 20, 2022) (Order Instituting Proceedings). The case also presents a controversy to which an agency of the United States is a party. As such, it falls squarely within the exclusive jurisdiction of the federal judiciary. *See also* 15 U.S.C. § 80b-14(a) ("[t]he district courts of the United States ... shall have jurisdiction of violations of [the Advisers Act] ... and, concurrently with State and Territorial

35

courts, of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of [the Advisers Act]").

Any doubt about whether SEC's follow-on prosecution against Lemelson belongs in an Article III court was conclusively removed last year by the Supreme Court's decision in *Jarkesy*. Indeed, SEC's administrative proceeding against *Jarkesy* was prosecuted in part under the *same section* of the *same statute*—Section 203(f) of the Advisers Act, 15 U.S.C. § 80b-3(f)—as the one under which SEC is prosecuting Lemelson. *See* Order Instituting Proceedings, *John Thomas Capital Mgmt. Group LLC*, SEC Rel. No. 33-9396 (Mar. 22, 2013). And among the sanctions SEC imposed against George Jarkesy in that proceeding was a lifetime bar from the securities industry—the very same sanction SEC is now threatening against Lemelson. *See* Order Imposing Remedial Sanctions, *John Thomas Capital Mgmt. Group LLC*, SEC Rel. No. 33-10834 (Sept. 4, 2020) ("ORDERED, that George R. Jarkesy is barred from associating with any broker, dealer, investment adviser, municipal securities dealer, municipal advisor, transfer agent, or nationally recognized statistical rating organization.").

36

The Court in *Jarkesy* emphatically held that SEC's case against Mr. Jarkesy had to be adjudicated in an Article III court, not in SEC's in-house administrative tribunal.  603 U.S. at 127, 136, 140.  In doing so, the Court further held that SEC's case against Mr. Jarkesy concerned "private rights" rather than "public rights."  *Id.* at 127-40.

Despite these clear holdings, the district court cited several pre-*Jarkesy* cases—primarily *Atlas Roofing Co. v. Occupational Safety and Health Review Commission*, 430 U.S. 442 (1977)—to conclude that SEC's administrative prosecution of Lemelson, involving the same provision of the same statute at issue in *Jarkesy*, concerned public rights rather than private rights, and thus could be withdrawn from Article III jurisdiction and constitutionally adjudicated in an Article II administrative forum notwithstanding *Jarkesy*.  JA042-47.  In the district court's view, those pre-*Jarkesy* cases had "developed a more capacious understanding of public rights," JA042, one that includes not just claims brought by or against the United States but "even some disputes between private parties," JA043 (citations omitted).  Quoting from the *dissenting* opinion in *Jarkesy*, the district court described the "heartland" of the public rights

exception as "claims belonging to the Government." JA043 (quoting *Jarkesy*, 603 U.S. at 174 (Sotomayor, J., dissenting)).

The district court's "more capacious" view of the public rights exception, based mostly on *Atlas Roofing* and in part on the dissenting opinion in *Jarkesy*, is fundamentally at odds with the *majority* opinion in *Jarkesy*. The *Jarkesy* majority limited, distinguished, and criticized the exception and *Atlas Roofing* as "a departure from our legal traditions" that "has no textual basis in the Constitution" and that has been widely disparaged or "simply ignored" by scholars and commentators. 603 U.S. at 131, 138 n.4. Although the Court stopped short of expressly overruling *Atlas Roofing*, it left little doubt that whatever lingering vestiges of the public rights exception remain after *Jarkesy*, that exception is strictly limited to cases involving revenue collection, foreign commerce, immigration, tariffs, relations with Indian tribes, and the granting of public benefits. *Id.* at 128-30. SEC plays no role in these functions.

The district court's expansive view of what's left of the public rights exception—extending its reach to sweep in punitive SEC law enforcement prosecutions far more akin to the one at issue in *Jarkesy* than the one at issue in *Atlas Roofing*—cannot be squared with *Jarkesy*'s

38

admonition against further judicial expansion of the exception.[7]  SEC's administrative prosecution arose entirely from its underlying claims that Lemelson allegedly committed securities fraud by writing and speaking untruthfully about a publicly traded corporation.  JA008-09.  Those types of allegations were well-known to common-law courts adjudicating tort claims sounding in fraud and defamation.  Moreover, SEC admitted in the district court that the remedy it threatens to impose in its administrative follow-on prosecution—an order prohibiting Lemelson from engaging in certain conduct that would deem him "associated" with any investment adviser—is roughly comparable to an equitable injunction, a type of remedy routinely awarded by courts of equity, and one that the Constitution expressly allows to be awarded *only* by Article III courts, not executive branch officers.  *See* Defendant's Combined Opposition to Plaintiff's Motion for Preliminary Injunction and

---

[7] *Cf. NIH v. Am. Pub. Health Ass'n*, No. 25A103, 2025 WL 2415669, at *3-*4 (2025) (Gorsuch, J., concurring in part and dissenting in part) (criticizing district court's reliance on opinions of dissenting Justices in earlier case and on an appeals court decision repudiated by the majority in that earlier case).

Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss, ECF No. 31-1, at 18-19 (filed Jan. 16, 2025).

*Jarkesy* made clear that the public rights exception is just that—an *exception* to the default presumption that cases routinely handled by courts of law and equity involve private rights. The district court's expansive view of public rights would effectively flip that default presumption on its head so that any case involving the government would presumptively be swallowed up by the public rights exception unless the government's target could identify a specific precedent holding otherwise. But that gets the *Jarkesy* analysis completely upside-down. Under *Jarkesy*, when the government prosecutes a private citizen to punish and deter alleged wrongdoing and to deprive the citizen of his private property and liberty interests in earning a livelihood in his chosen profession—as opposed to, for example, adjudicating claims for benefits paid from the public fisc—that is a quintessential threat to *private* rights, not public rights.[8]

---

[8] To the extent relevant, Lemelson was never required to register with SEC as an investment adviser or associated person, so SEC's follow-on administrative prosecution involves nothing akin to the revocation of a government-issued license.

The district court also considered *Jarkesy* distinguishable in part because a footnote in the majority opinion said the relevant statute in that case was "barely a decade old" whereas the relevant statute in Lemelson's case was enacted nearly a century ago. JA047 (quoting *Jarkesy*, 603 U.S. at 131 n.2). But as previously noted, both cases involved the *same* underlying statute—namely, Advisers Act Section 203(f), 15 U.S.C. § 80b-3(f). True, amendments in 2010 to *other* subsections of Section 203 (and to parallel provisions of other securities statutes) sought to allow SEC to use its non-Article III administrative forum to impose monetary penalties against Mr. Jarkesy *in addition to* barring him from the securities industry under Section 203(f). Those amendments, however, did not alter the provision of Section 203(f) pursuant to which SEC had barred *Jarkesy* from the securities industry and now similarly threatens to bar Lemelson. The Supreme Court in *Jarkesy* affirmed a Fifth Circuit judgment that swept aside the *entirety* of SEC's sanctions order against Mr. Jarkesy, including not just the monetary penalties but also the securities-industry bar. *See* 603 U.S. at 119-120. And upon remand, the Fifth Circuit reiterated its vacatur of the entirety of SEC's sanctions order, noting that there was neither need nor

41

reason to remand it to SEC for further proceedings.  *Jarkesy v. SEC*, 132 F.4th 745, 746 (5th Cir. 2024).

Nothing in either court's *Jarkesy* decision remotely suggested that SEC was free to re-prosecute Mr. Jarkesy in its administrative tribunal merely by forgoing any monetary sanctions, nor that SEC's prosecution under one subsection of Advisers Act Section 203 implicates private rights while prosecution under a nearby subsection implicates only public rights.  In all such cases, SEC prosecutes a private citizen for alleged wrongdoing and threatens sanctions designed to deprive private property and liberty interests and to "punish or deter the wrongdoer" rather than "solely to 'restore the status quo'" or to compensate any alleged victim. *Jarkesy*, 603 U.S. at 123 (quoting *Tull v. United States*, 481 U.S. 412, 422 (1987)).  Those threatened property and liberty interests include "the right to follow a chosen profession free from unreasonable government interference.'"  *Campbell v. Dist. of Columbia*, 894 F.3d 281, 288 (D.C. Cir. 2018) (quoting *Greene v. McElroy*, 360 U.S. 474, 492, (1959)); *accord McKinney v. Dist. of Columbia*, 142 F.4th 784, 795 (D.C. Cir. 2025) (quoting *Campbell*); *Abdelfattah v. U.S. Dep't of Homeland Sec.*, 787 F.3d 524, 538 (D.C. Cir. 2015) ("when the government formally debars an

individual from certain work or implements broadly preclusive criteria that prevent pursuit of a chosen career, there is a cognizable 'deprivation of liberty that triggers the procedural guarantees of the Due Process Clause'" (quoting *Trifax Corp. v. Dist. of Columbia*, 314 F.3d 641, 643-44 (D.C. Cir. 2003))).

*Jarkesy* is dispositive of Lemelson's Article III claim. SEC is prohibited from prosecuting Lemelson other than in an Article III court. Administrative prosecution is especially inappropriate here because SEC already prosecuted a related case against Lemelson in an Article III court, where it could have sought the relief it now seeks to impose administratively but declined to do so. And the public rights exception to Article III adjudication, to the extent it retains any vitality after *Jarkesy*, is wholly inapplicable here.

## III. LEMELSON STATED A VALID CLAIM THAT SEC'S ALJ ENJOYS EXCESSIVE TENURE PROTECTION IN VIOLATION OF ARTICLE II OF THE CONSTITUTION AND THE SEPARATION OF POWERS

In the district court, SEC belatedly conceded that the multiple layers of statutory removal restrictions enjoyed by the ALJ assigned to superintend and initially decide SEC's follow-on administrative prosecution of Lemelson "do not comport with the separation of powers

43

and Article II." JA023. SEC further conceded that it would no longer defend those restrictions in litigation. *Id.* Thus, it was undisputed that Lemelson's fate is now in the hands of an administrative officer who enjoys excessive protection from presidential removal.

The district court nevertheless agreed with SEC that it could do nothing to stop it; Lemelson will need to grin and bear it, because his Amended Complaint did not sufficiently predict how the ALJ's unconstitutional tenure protections might harm him or play some role in the outcome of his case. JA048-49. The district court did not explain how Lemelson could predict ahead of time how he might be harmed by the ALJ's conduct during any future hearing or by any future ALJ decision. At a minimum, however, Lemelson did predict (and expressly pled, *see* JA015, JA017, JA020) that regardless of the outcome of the hearing, he is already suffering, and will continue to suffer, the "here-and-now" constitutional harm of "being subjected to unconstitutional agency authority—a proceeding by an unaccountable ALJ." *Axon/Cochran*, 598 U.S. at 191 (quoting petitioners' briefs; cleaned up); *see also id.* (the harm "is about subjection to an illegitimate proceeding, led by an illegitimate decisionmaker"). The Supreme Court has repeatedly held that this type

44

of "here-and-now injury"—which "may sound a bit abstract"—is not only cognizable but "impossible to remedy once the proceeding is over," *id.* (quoting *Seila Law*, 591 U.S. at 212) (cleaned up).

Moreover, although the district court may be powerless to remedy this constitutional harm after the fact, it has ample power to prevent it from happening. It might, for example, enjoin SEC's prosecution unless and until SEC reassigns its administrative case to a constitutionally tenured adjudicator, such as SEC itself or one of its presidentially appointed and Senate-confirmed commissioners. *See* 15 U.S.C. § 78d-1 (authorizing SEC to delegate any of its functions to, among others, "an individual Commissioner"). Ironically, until Lemelson filed his Complaint in the district court, SEC appeared determined to adjudicate the case by itself without enlisting the help of any ALJ, so an effective injunction might be one that simply negates SEC's belated assignment of the proceeding to its ALJ. *See In re Lemelson*, SEC Inv. Adv. Act. Rel. No. 6000 (Apr. 20, 2022) (Order Instituting Proceedings); *In re Lemelson*,

SEC Inv. Adv. Rel. No. 6755 (Oct. 23, 2024) (order denying motions and convening a public hearing before an ALJ).[9]

The declaratory relief sought by Lemelson would also be meaningful. It would serve as a definitive judicial ruling that the statutory tenure protection enjoyed by SEC's ALJs is unconstitutional (and perhaps deter SEC from continuing to assign cases to those ALJs). A declaratory judgment might also sever one or more of the statutory tenure protections currently enjoyed by the ALJs. *Cf. Free Enter. Fund*, 561 U.S. at 508-09 (judicially excising tenure protections for board members of quasi-governmental regulator); *VHS Acquisition Subsidiary No. 7 v. NLRB*, 759 F. Supp. 3d 88, 100-01 (D.D.C. 2024) (judicially excising statutory tenure protection for NLRB ALJs)

In short, the district court's dismissal of Lemelson's Article II tenure-protection claim was premature, and it erroneously overlooked the court's ample ability to provide meaningful judicial relief should Lemelson ultimately prevail on that claim, the merits of which are undisputed.

---

[9] Such relief, of course, would not remedy all the other constitutional harms Lemelson has alleged.

46

**IV.** **LEMELSON STATED A VALID CLAIM THAT SEC IS DEPRIVING HIM OF AN UNBIASED ADJUDICATOR AND THUS THE DUE PROCESS OF LAW**

The Fifth Amendment to the U.S. Constitution guarantees, in relevant part, that "No person shall be … deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "A fair trial in a fair tribunal is the basic requirement of due process," *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 876 (2009) (quoting *In re Murchison*, 349 U.S. 133, 136 (1955)) (cleaned up), as well as an "inexorable safeguard" of individual liberty, *Ohio Bell Tel. Co. v. Pub. Utils. Comm'n of Ohio*, 301 U.S. 292, 304 (1937) (quoting *St. Joseph Stock Yards Co. v. United States*, 298 U.S. 38, 73 (1936)). This means not only actual fairness but the appearance of fairness. "Every procedure which would offer a possible temptation to the average man as a judge to forget the burdens of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear and true between the state and the accused denies the latter due process of law." *Tumey v. Ohio*, 273 U.S. 510, 532 (1927).

One of the bedrock prerequisites of fairness and due process of law is that adjudicators must not decide their own cases. *See, e.g.*, *Williams*

47

*v. Pennsylvania*, 579 U.S. 1, 8-9 (2016); *In re Murchison*, 349 U.S. 133, 136-37 (1955).  Yet that is precisely what SEC is poised to do in its follow-on administrative prosecution against Lemelson.  Moreover, as previously detailed in Lemelson's Amended Complaint (JA008-13) and summarized earlier in this brief, SEC has had a longstanding hostile and adversarial relationship with Lemelson—and indeed is still litigating against him in both this case and an earlier case still pending in the District of Massachusetts.  Worse yet, the SEC lawyers leading the prosecution team in SEC's follow-on administrative proceeding against Lemelson are the very same lawyers with whom SEC has been working, hand in fiduciary glove, in the still-pending federal case against Lemelson in Massachusetts.

Given SEC's longstanding adversarial relationship with Lemelson, the appearance and reality of having the adjudicative deck stacked against him—and of SEC's intractable adjudicative bias against him—could not be clearer.  That bias, moreover, cannot be cleansed by merely assigning the initial decision of the matter to an SEC-employed ALJ, who is presumably familiar with SEC's hostility toward Lemelson and whose decision can be overturned by SEC in any event.

48

As Lemelson conceded in the district court, however, his due process claim is in considerable tension with this Court's decision in *Blinder, Robinson & Co. v. SEC*, 837 F.2d 1099 (D.C. Cir. 1988), which vastly expanded upon the Supreme Court's decision in *Withrow v. Larkin*, 421 U.S. 35 (1975). In dismissing a similar due process challenge in *Blinder*, this Court exhibited the judicial tendency during that bygone era to venerate the administrative state and accord its agencies wide leeway and deference based on uncodified default presumptions about the preternatural honesty, integrity, and impartiality of executive branch officials. *See Blinder*, 837 F.2d at 1106 n.7 ("our law assumes integrity" of agency officials); *id.* at 1107 (invoking the "presumption of honesty and integrity" (quoting *Withrow*, 421 U.S. at 47)).

Perhaps the high-water mark of that era was *Withrow* itself, in which the Supreme Court found no risk of partiality or unfairness despite an administrative adjudicator's previous consideration of the evidence against the accused respondent in the context of a predicate decision to approve the filing of the charges that led to the adjudication. 421 U.S. at 56. *Blinder* went further by brushing aside due process concerns even where the administrative adjudicator had not only previously considered

49

the evidence when approving the charges (*ex parte*, no less) but later became the named plaintiff in parallel adversarial court litigation against the same accused person, and even where that parallel adversarial court litigation was still ongoing at the time of the agency's administrative adjudication.  837 F.2d at 1104-06.

The *Blinder* decision was also heavily influenced by the panel's reluctance to upset the then-prevailing status quo in the field of administrative law.  *See, e.g.*, *id.* at 1104 (petitioner's due process challenge "represents nothing less than an assault on the constitutionality of a principal feature of the Administrative Procedure Act itself"); *id.* at 1107 (petitioner's due process challenge "would bring down too many procedures designed, and working well [*sic*], for a governmental structure of great and growing complexity" (quoting *Withrow*, 421 U.S. at 49-50); *id.* (petitioner's due process challenge would "work a revolution in administrative (not to mention constitutional) law").  More recently, however, courts have tempered their erstwhile reverence for administrators and reticence to upset conventional wisdom about the administrative state.

50

Indeed, in recent years, the Supreme Court has signaled a willingness to effectuate *Blinder*'s feared "revolution in administrative (if not constitutional) law." *Id.* For example, the Court has prohibited agencies from imposing monetary penalties in their in-house administrative adjudications, *see Jarkesy*, 603 U.S. at 123; allowed agency enforcement targets to preemptively enlist federal district courts to scrutinize the structural constitutionality of agency in-house, non-jury administrative enforcement proceedings instead of forcing them to endure the entire administrative process before seeking judicial relief, *see Axon/*Cochran, 598 U.S. at 195-96; rejected agency efforts to evade or enlarge their statutory deadlines for commencing enforcement proceedings, *see Kokesh*, 581 U.S. at 457, 461 (SEC cases seeking disgorgement); *Gabelli v. SEC*, 568 U.S. at 447-49 (SEC cases seeking civil monetary penalties), curtailed agency power to seek restitution and disgorgement from alleged wrongdoers, *see AMG Capital Mgmt., LLC v. FTC*, 593 U.S. 67, 70, 75-78 (2021) (restitution); *Liu*, 591 U.S. at 85-87 (disgorgement), required final agency decisionmakers of enforcement cases and other important matters to be principal officers appointed by the President, or at least by presidentially appointed and Senate-

51

confirmed "Heads of Department," *see Lucia* , 585 U.S. at 241, 244-49 (addressing SEC ALJs); *United States v. Arthrex*, 594 U.S. 1, 16-17 (2021) (addressing administrative patent judges assigned to the Patent Trial and Appeal Board), and invalidated excessive statutory restrictions on the President's ability to remove agency officers who wield significant executive powers, *see Seila Law*, 591 U.S. at 213; *Free Enter. Fund*, 561 U.S. at 495-98.

Many of these rulings overturned consensus prevailing law among the judicial circuits, not to mention longstanding conventional wisdom and assumptions within federal agencies and among legal practitioners. During the era when *Withrow* and *Blinder* were decided, moreover, some of these more recent decisions were likely unthinkable.

Lemelson respectfully submits that the decision in *Blinder* was not only mistaken at the time but, more importantly, it would be overruled if reviewed by today's Supreme Court. Even assuming today's Court might conceivably reaffirm its own decision in *Withrow* (a dubious assumption), the Court's above-noted intervening precedents on administrative law, administrative deference, administrative adjudication, and due process

52

have fundamentally rejected the factual premises, presumptions, and legal analyses upon which *Blinder*'s relevant holdings were based.[10]

Moreover, the Court would likely find *Blinder* impossible to square with its own intervening decisions emphasizing the critical importance of both impartiality and the appearance of impartiality on the part of adjudicators.  *See, e.g.*, *Williams*, 579 U.S. at 4, 16 (appellant's due process rights violated by the participation of one of six state supreme court justices who, 30 years earlier as a district attorney, had given his "official approval" to subordinate prosecutors to seek the death penalty against the appellant, even though eventual supreme court decision was unanimous); *Caperton*, 556 U.S. at 872, 884-86 (litigant's due process rights violated where one state supreme court justice in 3-2 majority decision against litigant had received campaign contributions from the chairman of litigant's corporate adversary).

---

[10] As previously noted, the Court's sanguinity in *Blinder* about SEC's presumed ability to maintain an open mind in its administrative follow-on prosecutions is belied by the reality that *every* such follow-on proceeding has invariably resulted in an industry bar or suspension, without exception.

In both *Williams* and *Caperton*, Justices cited *Withrow* for the proposition that courts must ask whether "under a realistic appraisal of psychological tendencies and human weakness," an adjudicator's interest in the outcome of a case "poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented."  *Williams*, 579 U.S. at 21 (Roberts, C.J., dissenting); *Caperton*, 556 U.S. at 883-84.  Both cases also interpreted the requirements of due process more expansively than *Withrow* or *Blinder*.

Lastly, while Lemelson's due process claim is admittedly in tension with *Blinder*, the decision in *Blinder* is technically distinguishable and not controlling, because it addressed only the disciplinary provisions of the Exchange Act and not the parallel provisions of the Advisers Act  that SEC has invoked against Lemelson.  In addition, *Blinder* lacked the kind of parallel public SEC media campaign that SEC has pursued against Lemelson, as detailed in Lemelson's Amended Complaint (JA009-12) and summarized earlier in this brief.  Thus, unlike in this case, the Court in *Blinder* had no reason to consider its parallel line of precedent prohibiting administrative officials from adjudicating cases after they

54

have made public, extra-judicial comments that suggest prejudgment of the issues. *See, e.g.*, *Cinderella Career & Finishing Schools, Inc. v. FTC*, 425 F.2d 583, 591(D.C. Cir. 1970); *Texaco, Inc. v. FTC*, 336 F.2d 754, 760 (D.C. Cir. 1964), *vacated and remanded per curiam on other grounds*, 381 U.S. 739 (1965).

SEC's adjudication of its own administrative follow-on prosecution against Lemelson profoundly deprives him of his Fifth Amendment right to due process of law in the form of an unbiased adjudicator, and it threatens to deprive him of his private liberty and property rights to pursue his chosen livelihood and to continue operating his successful business. This Court should either distinguish and strictly limit the reach of its *Blinder* decision or ultimately overrule that decision en banc.

## CONCLUSION

The Court should reverse the district court's decision dismissing Lemelson's Amended Complaint and remand the case for further proceedings.

Dated: September 3, 2025                    Respectfully submitted,

/s/ *Russell G. Ryan*
Russell G. Ryan
        *Counsel of Record*
John J. Vecchione
Andreia Trifoi
Mark Chenoweth
NEW CIVIL LIBERTIES ALLIANCE
4250 N. Fairfax Dr., Ste. 300
Arlington, VA 22203
(202) 869-5210
russ.ryan@ncla.legal

*Counsel for Plaintiff-Appellant*

56

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of the Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7)(B)(i) because it contains fewer than 13,000 words. This brief also complies with the typeface and type-style requirements of the Federal Rules of Appellate Procedure because it was prepared using Microsoft Word in Century Schoolbook 14-point font, a proportionally spaced typeface.

/s/ *Russell G. Ryan*
Russell G. Ryan

*Counsel for Plaintiff-Appellant*

57

## CERTIFICATE OF SERVICE

I hereby certify that on September 3, 2025, I electronically filed the foregoing brief, including the addendum that follows this page, together with the accompanying Joint Appendix attachment, with the Clerk of Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

/s/ *Russell G. Ryan*
Russell G. Ryan

*Counsel for Plaintiff-Appellant*

*Lemelson v. SEC*
*Case No. 25-5208*

# PLAINTIFF-APPELLANT'S ADDENDUM OF
# RELEVANT CONSTITUTIONAL PROVISIONS AND STATUTES

## Table of Contents

Page

I.   Constitutional Provisions

    Article II                                    1
    Article III                                   1
    Amendment V                                   2
    Amendment VII                                 2

II.  Statutes

    15 U.S.C. § 80b-3                             2
    15 U.S.C. § 80b-13                            3
    28 U.S.C. § 1291                              4
    28 U.S.C. § 1331                              4
    28 U.S.C. § 1346                              4
    28 U.S.C. § 1367                              4
    28 U.S.C. § 1651                              5
    28 U.S.C. § 2201                              5

*Lemelson v. SEC*
Case No. 25-5208


## I.  CONSTITUTIONAL PROVISIONS

### Article II

**Section 1.**  The executive Power shall be vested in a President of the United States of America. ...

... .

**Section 3.**  ... [The President] shall take Care that the Laws be faithfully executed ... .


### Article III

**Section 1.**  The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish.  The Judges, both of the supreme and inferior Courts, shall hold their Offices during good Behaviour, and shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office.

**Section 2.**  The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority;—to all Cases affecting Ambassadors, other public Ministers and Consuls; ... [and] to Controversies to which the United States shall be a Party ... .

**Amendment V**

No person shall ... be deprived of life, liberty, or property, without due process of law ... .

**Amendment VII**

In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.

## II.   RELEVANT STATUTES

**15 U.S.C. § 80b-3 – Registration of Investment Advisers**

...

(f)   *Bar or Suspension from Association with Investment Adviser; Notice and Hearing.*   The Commission, by order, shall censure or place limitations on the activities of any person associated, seeking to become associated, or, at the time of the alleged misconduct, associated or seeking to become associated with an investment adviser, or suspend for a period not exceeding 12 months or bar any such person from being associated with an investment adviser, broker, dealer, municipal securities dealer, municipal advisor, transfer agent, or nationally recognized statistical rating organization, if the Commission finds, on the record after notice and opportunity for hearing, that such censure, placing of limitations, suspension, or bar is in the public interest and that such person ... is enjoined from any action, conduct, or practice specified in paragraph (4) of subsection (e).

... .

2

### 15 U.S.C. § 80b-13 – Court review of orders

(a) *Petition; Jurisdiction; Findings of Commission; Additional Evidence; Finality*.  Any person or party aggrieved by an order issued by the Commission under this subchapter may obtain a review of such order in the United States court of appeals within any circuit wherein such person resides or has his principal office or place of business, or in the United States Court of Appeals for the District of Columbia, by filing in such court, within sixty days after the entry of such order, a written petition praying that the order of the Commission be modified or set aside in whole or in part. A copy of such petition shall be forthwith transmitted by the clerk of the court to any member of the Commission, or any officer thereof designated by the Commission for that purpose, and thereupon the Commission shall file in the court the record upon which the order complained of was entered, as provided in section 2112 of title 28. Upon the filing of such petition such court shall have jurisdiction, which upon the filing of the record shall be exclusive, to affirm, modify, or set aside such order, in whole or in part. No objection to the order of the Commission shall be considered by the court unless such objection shall have been urged before the Commission or unless there were reasonable grounds for failure so to do. The findings of the Commission as to the facts, if supported by substantial evidence, shall be conclusive. ...  The judgment and decree of the court affirming, modifying, or setting aside, in whole or in part, any such order of the Commission shall be final, subject to review by the Supreme Court of the United States upon certiorari or certification as provided in section 1254 of title 28.

... .

## 28 U.S.C. § 1291 – Final decisions of district courts

The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States … .

## 28 U.S.C. § 1331 – Federal question

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

## 28 U.S.C. § 1346 – United States as defendant

(a)     The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of:

… .

(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department … .

## 28 U.S.C. § 1367 – Supplemental jurisdiction

(a)     Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such

supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

....

(b)     The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

## 28 U.S.C. § 1651 – Writs

(a)     The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

(b) An alternative writ or rule nisi may be issued by a justice or judge of a court which has jurisdiction.

## 28 U.S.C. § 2201 – Creation of remedy

(a)     In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further

relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

....