ORAL ARGUMENT NOT YET SCHEDULED

No. 25-5208

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

EMMANUEL LEMELSON, REVEREND FATHER,

*Plaintiff-Appellant,*

v.

SECURITIES AND EXCHANGE COMMISSION,

*Defendant-Appellee.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA
No. 1:24-cv-2415-SLS

---

## BRIEF OF PACIFIC LEGAL FOUNDATION AND
## INVESTOR CHOICE ADVOCATES NETWORK
## AS AMICI CURIAE IN SUPPORT OF
## PLAINTIFF-APPELLANT AND REVERSAL

---

Joshua M. Robbins
Nicholas L. Clifford
PACIFIC LEGAL FOUNDATION
3100 Clarendon Blvd.
Suite 1000
Arlington, VA 22201
(202) 945-9524
JRobbins@pacificlegal.org
NClifford@pacificlegal.org

*Attorneys for Amici Curiae*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

### A. Parties and Amici

Except as stated below, all parties, intervenors, and amici appearing before the district court and in this court are listed in the Brief for Plaintiff-Appellant. That brief does not list Amici Pacific Legal Foundation (PLF) or Investor Choice Advocates Network (ICAN), the filers of this amicus curiae brief.

Under Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, PLF, a nonprofit corporation organized under the laws of California, certifies that it has no parent companies, subsidiaries, or affiliates that have issued shares to the public. PLF is a legal nonprofit dedicated to defending people's liberties when threatened by government overreach and abuse.

ICAN is a non-profit, public interest firm working to expand access to markets by underrepresented investors and entrepreneurs. ICAN has no parent corporation, and no publicly held company has a 10% or greater ownership in ICAN.

### B. Rulings Under Review

References to rulings under review appear in Plaintiff-Appellant's Opening Brief.

### C. Related Cases

References to related cases appear in Plaintiff-Appellant's Opening Brief.

DATED: September 10, 2025

Respectfully submitted,

/s/ *Joshua M. Robbins*
Joshua M. Robbins
Nicholas L. Clifford
PACIFIC LEGAL FOUNDATION
3100 Clarendon Blvd.
Suite 1000
Arlington, VA 22201
(202) 945-9524
JRobbins@pacificlegal.org
NClifford@pacificlegal.org

*Attorneys for Amici Curiae*

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ..........C1

TABLE OF AUTHORITIES ................................................................... ii

GLOSSARY..........................................................................................iv

STATUTES AND REGULATIONS....................................................v

STATEMENT OF IDENTIY, INTEREST, AND AUTHORITY TO FILE ............1

STATEMENT OF AUTHORSHIP AND FINANCIAL CONTRIBUTIONS ........3

INTRODUCTION AND SUMMARY OF ARGUMENT .......................................4

ARGUMENT .........................................................................................6

    I.    Prohibiting Collateral Seventh Amendment Claims Forecloses Meaningful Judicial Review.................................................................7

        A.    Agency Adjudications that Violate the Seventh Amendment Are Unconstitutionally Structured ...............................................7

        B.    Being Subjected to the Administrative Adjudication of a Common Law Claim Cannot Be Remedied After the Fact ......12

    II.    Claims Under the Seventh Amendment Are Wholly Collateral to Administrative Adjudications ............................................................14

        A.    Whether a Claim Is Common Law in Nature Is Wholly Collateral to an Enforcement Action .......................................15

        B.    The Applicability of the Public Rights Exception Is Wholly Collateral to the Enforcement Action .......................................16

    III.    Seventh Amendment Claims Are Outside the Expertise of Non-Article III Tribunals ...................................................................18

CONCLUSION.......................................................................................21

CERTIFICATE OF COMPLIANCE.......................................................22

CERTIFICATE OF SERVICE .............................................................23

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Axon Enterprise, Inc. v. FTC*,
    598 U.S. 175 (2023)..................................................................2, 4–8, 10, 12–20

*Carr v. Saul*,
    593 U.S. 83 (2021)..................................................................................18

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)................................................................................19

*City of Monterey v. Del Monte Dunes at Monterey, Ltd.*,
    526 U.S. 687 (1999)................................................................................16

*Free Enter. Fund v. PCAOB*,
    561 U.S. 477 (2010)....................................................................14–15, 18–19

*Leachco, Inc. v. CPSC*,
    103 F.4th 748 (10th Cir. 2024) ............................................................1

*Manis v. USDA*,
    No. 1:24-CV-175, 2025 WL 2404985 (M.D.N.C. Aug. 19, 2025),
    *appeal docketed*, No. 25-2001 (4th Cir. Aug. 28, 2025) ......................................1

*Marbury v. Madison*,
    5 U.S. (1 Cranch) 137 (1803) ............................................................20

*Mitchell v. Forsyth*,
    472 U.S. 511 (1985)................................................................................12

*Murray's Lessee v. Hoboken Land & Improvement Co.*,
    18 How. 272 (1855) ............................................................................8

*Parsons v. Bedford, Breedlove & Robeson*,
    28 U.S. 433 (1830) ............................................................................8

*Sackett v. EPA*,
    598 U.S. 651 (2023)................................................................................1

*SEC v. Jarkesy*,
603 U.S. 109 (2024)...........................................................................6–13, 15–20

*Stern v. Marshall*,
564 U.S. 462 (2011)....................................................................................6, 9

*Thunder Basin Coal Co. v. Reich*,
510 U.S. 200 (1994).....................................................................................4–5

*Tull v. United States*,
481 U.S. 412 (1987)...................................................................................15–16

*United States v. ERR, LLC*,
35 F.4th 405 (5th Cir. 2022) ......................................................................10–11

*United States v. Wonson*,
28 F. Cas. 745 (C.C.D. Mass. 1812).................................................................11

## Constitutional Provisions

U.S. Const. amend. VII ...................................................................................8

U.S. Const. art. III, § 2, cl. 1 ...........................................................................8

## Other Authorities

Martin, Luther, *Information to the General Assembly of the State of Maryland*,
*in* 2 The Complete Anti-Federalist
(Herbert J. Storing ed., Univ. of Chi. Press 1981)............................................10

Thomas, Suja A., *A Limitation on Congress: "In Suits at Common Law"*,
71 Ohio St. L.J. 1071 (2010) ............................................................................11

Warren, Mercy Otis, *Observations on the New Constitution, and on
the Federal and State Conventions, By a Columbian Patriot*,
*in* 4 The Complete Anti-Federalist
(Herbert J. Storing ed., Univ. of Chi. Press 1981)............................................11

Wolfram, Charles W., *The Constitutional History of the Seventh Amendment*,
57 Minn. L. Rev. 639 (1973) ......................................................................10–11

# GLOSSARY

ICAN – Investor Choice Advocates Network

PLF – Pacific Legal Foundation

SEC – Securities and Exchange Commission

## STATUTES AND REGULATIONS

All applicable statutes and regulations are contained in the Plaintiff-Appellant's Opening Brief.

## STATEMENT OF IDENTIY, INTEREST, AND AUTHORITY TO FILE

Founded in 1973, PLF is a nonprofit, tax-exempt California corporation established for the purpose of litigating matters affecting the public interest. PLF provides a voice in the courts for limited constitutional government, private property rights, and individual freedom. PLF is the most experienced public-interest legal organization defending the constitutional principle of separation of powers in the arena of administrative law, *see, e.g.*, *Sackett v. EPA*, 598 U.S. 651 (2023) (interpreting "waters of the United States" in the Clean Water Act), including in cases challenging the constitutionality of administrative adjudications, *see, e.g.*, *Leachco, Inc. v. CPSC*, 103 F.4th 748 (10th Cir. 2024) (removal power, Article III, Due Process of Law, Seventh Amendment); *Manis v. USDA*, No. 1:24-CV-175, 2025 WL 2404985 (M.D.N.C. Aug. 19, 2025), *appeal docketed*, No. 25-2001 (4th Cir. Aug. 28, 2025) (Appointments Clause and Seventh Amendment).

ICAN is a nonprofit, public interest organization dedicated to expanding access to capital markets and defending entrepreneurs and investors against regulatory overreach. ICAN provides a voice in the courts and in policy debates for small businesses and underrepresented investors, focusing on protecting due process, limiting excessive punishments, and modernizing outdated investment rules. Through strategic litigation and advocacy, ICAN challenges the Securities and

Exchange Commission when it exceeds its lawful authority and works to ensure that capital markets remain fair, open, and accessible to all Americans.

PLF and ICAN (together, Amici) file this brief pursuant to Rule 29(a) of the Federal Rules of Appellate Procedure, and all current parties to the appeal—Reverend Father Emmanuel Lemelson and the Securities and Exchange Commission (SEC)—have consented to the filing of this brief.

Additionally, Amici joined together in this brief in an effort to comply with D.C. Circuit Rule 29(d) regarding separate briefs of amicus curiae. The question of subject matter jurisdiction for collateral structural constitutional claims is a newly developing area of the law after *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023). In particular, there is uncertainty as to whether Seventh Amendment claims qualify as structural constitutional claims that can be brought collaterally under *Axon*. Amici believe this issue warrants an in-depth discussion of the Seventh Amendment's history and structural nature in combination with Article III, given the implications of these questions for the availability of judicial review of constitutional challenges to agency adjudications.

## STATEMENT OF AUTHORSHIP AND FINANCIAL CONTRIBUTIONS

This brief was not authored in whole or in part by counsel for any party. No party or counsel for a party, and no person other than Amici or their counsel, contributed money to fund this brief's preparation or submission.

## INTRODUCTION AND SUMMARY OF ARGUMENT

After the Supreme Court's decision in *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023), district courts have subject matter jurisdiction to hear collateral challenges to unconstitutionally structured administrative adjudications. Applying a three-part test, *Axon* concluded that an adjudication respondent could not obtain a meaningful remedy—or any remedy—for the injury of being subjected to an unconstitutionally structured non-Article III tribunal after the fact, and that structural constitutional claims are wholly collateral to and outside the expertise of the same.

Here, the district court misapplied that test and incorrectly concluded that it lacked subject matter jurisdiction under *Axon* to hear Reverend Father Emmanuel Lemelson's Seventh Amendment claim. Most fundamentally, the court misunderstood the nature of Lemelson's Seventh Amendment claim. It cast that claim as a simple disagreement with the procedures offered in the SEC's follow-on adjudications. But the Seventh Amendment is a constitutional protection against arbitrary government power. And critically, it is a limit on the permissible *structure* of an adjudicatory body—if the Seventh Amendment jury trial right applies to a claim, it must be tried in an Article III court. So, the Seventh Amendment claim goes to the heart of the SEC's assertion of power over Lemelson's case.

*Axon* applied a three-factor test for determining whether existing statutory review schemes preclude district court jurisdiction developed in *Thunder Basin Coal*

*Co. v. Reich*, 510 U.S. 200 (1994): (1) whether "precluding district court jurisdiction 'foreclose[s] all meaningful judicial review'"; (2) whether the claim is "wholly collateral to the statute's review provisions"; and (3) whether the claim is "outside the agency's expertise." *Axon*, 598 U.S. at 186 (cleaned up). The Court concluded that structural claims challenging an agency's "power to proceed at all" need not proceed through the normal statutory review scheme. *Id.* at 192. With respect to the three factors, *Axon* explained that (1) being subjected to an unconstitutionally structured adjudication is a harm that could never be remedied after the fact; (2) structural constitutional claims are entirely collateral to the questions of liability in an adjudication; and (3) administrative agencies have no expertise in structural constitutional questions.

Seventh Amendment claims satisfy all three *Thunder Basin* factors in the same way as the removal and due process claims in *Axon*. (1) There is no available remedy after the fact for being forced to defend yourself in a proceeding that lacks the structural protections of the Seventh Amendment and Article III, and before an agency that lacks the authority to adjudicate the claims. (2) The Seventh Amendment analysis of the nature of a claim and whether it historically falls outside of Article III courts is wholly collateral to the administrative proceedings themselves. (3) Because the Seventh Amendment claim is a structural constitutional claim, administrative tribunals have no expertise in resolving them. While there may be

peculiarities to specific judicial review schemes, in the main, collateral challenges calling into question whether a non-Article III tribunal can adjudicate a claim at all are precisely the kind of structural constitutional claim that federal district courts have subject matter jurisdiction to review.

Refusing to permit the collateral review of Seventh Amendment claims under *Axon* will subject numerous respondents in administrative adjudications of common law claims to unconstitutionally structured, juryless processes. *See SEC v. Jarkesy*, 603 U.S. 109 (2024). Because Seventh Amendment claims fall squarely within the *Axon* framework, the District Court's dismissal of Lemelson's Seventh Amendment claim for lack of subject matter jurisdiction should be reversed.

## ARGUMENT

The adjudication of common law claims without a jury and outside of Article III courts is a serious breach of the Constitution's separation of powers. *See Jarkesy*, 603 U.S. at 126–28. Such adjudications are unconstitutionally structured because juryless, non-Article III tribunals lack the power to adjudicate common law claims. *See Stern v. Marshall*, 564 U.S. 462, 483 (2011). Accordingly, collateral challenges to non-Article III adjudications of common law claims are permitted under *Axon* to prevent the irreparable harm of being subjected to "an unconstitutionally structured decisionmaking process." 598 U.S. at 192, 195–96.

## I.    Prohibiting Collateral Seventh Amendment Claims Forecloses Meaningful Judicial Review

A Seventh Amendment claim satisfies the first *Axon* factor. There can be no meaningful judicial review because the "'here-and-now'" injury of being subjected to a juryless adjudication outside an Article III court cannot be remedied after the fact. *Axon*, 598 U.S. at 192. The Supreme Court concluded in *Axon* that the injury of being subjected to an "unconstitutionally structured decisionmaking process" is irreparable once the adjudication has occurred. *Id.* The Seventh Amendment claim alleges such an injury because the guarantee of a civil jury trial for a claim is coextensive with the constitutional requirement to adjudicate that claim in an Article III court. *Jarkesy*, 603 U.S. at 127. A respondent in a non-Article III adjudication of a common law claim to which the Seventh Amendment applies is not injured "from this or that ruling but from subjection to all agency authority." *See Axon*, 508 U.S. at 195. This injury "cannot be undone" once it occurs. *Id.* at 191.

### A.    Agency Adjudications that Violate the Seventh Amendment Are Unconstitutionally Structured

A Seventh Amendment claim against a non-Article III adjudication alleges that the adjudication is unconstitutionally structured, just like the removal and due process claims at issue in *Axon*. *See Jarkesy*, 603 U.S. at 140. Analytically, the questions of whether a claim is covered by the Seventh Amendment and whether that claim must be heard by an Article III court are the same, necessarily calling into

doubt a tribunal's ability to adjudicate the claim. *Jarkesy*, 603 U.S. at 120–21, 127. Thus, Seventh Amendment claims fall squarely within *Axon* because the analysis considers whether a non-Article III tribunal has the "power to proceed at all." 598 U.S. at 192.

The text of the Seventh Amendment "preserve[s]" the right to a jury trial "[i]n Suits at common law, where the value in controversy [] exceed[s] twenty dollars." U.S. Const. amend. VII. A suit at common law "is not limited to the 'common-law forms of action recognized' when the Seventh Amendment was ratified." *Jarkesy*, 603 U.S. at 122. It "embrace[s] all suits which are not of equity and admiralty jurisdiction," in whatever form they "settle legal rights." *Parsons v. Bedford, Breedlove & Robeson*, 28 U.S. 433, 447 (1830). Common law actions include a "statutory claim if the claim is 'legal in nature.'" *Jarkesy*, 603 U.S. at 122.

This broad set of common law claims must receive a jury trial in an Article III court. *Jarkesy*, 603 U.S. at 127. Article III brings within the "judicial Power" "*all* Cases, in Law." U.S. Const. art. III, § 2, cl. 1 (emphasis added). The cases "in Law" that are committed to Article III courts are the same set of "common law" cases that the Seventh Amendment covers. *Parsons*, 28 U.S. at 447. Thus, "[t]he Constitution prohibits Congress from 'withdraw[ing] from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law.'" *Jarkesy*, 603 U.S. at 127 (quoting *Murray's Lessee v. Hoboken Land & Improvement Co.*, 18 How. 272,

284 (1855)) (second alteration in original). Under the plain text of the Constitution, Executive Branch agencies cannot adjudicate common law claims.

This would be the end of the Seventh Amendment inquiry, but for the Supreme Court's recognition of the public rights exception to Article III. *Jarkesy*, 603 U.S. at 127–32. The public rights exception recognizes a class of cases that "historically could have been determined exclusively by [the executive and legislative] branches." *Id.* at 128 (quoting *Stern*, 564 U.S. at 493). Because the public rights exception "has no textual basis in the Constitution," it "must therefore derive instead from background legal principles." *Id.* at 131. Moreover, common law causes of action "presumptively concern[] private rights, and adjudication by an Article III court is *mandatory*." *Id.* at 128 (emphasis added).

From these lines of precedent emerged a two-part test for the applicability of the Seventh Amendment. *Jarkesy*, 603 U.S. at 120–21. First, courts determine whether the claim is common law in nature. *Id.* at 121–26. Second, courts determine whether the claim falls within the public rights exception such that it can be adjudicated outside of an Article III court without a jury. *Id.* at 127–32. If the public rights exception applies, the respondent in the non-Article III adjudication does not have a Seventh Amendment jury trial right. *Id.* at 120. In other words, to determine the applicability of the Seventh Amendment to a claim in a non-Article III adjudication is to determine whether that agency can adjudicate the claim at all.

Because a Seventh Amendment claim implicates the authority of a non-Article III tribunal to hear the claim, it fits within the *Axon* framework. In *Axon*, the constitutional claims—removal and due process—called into doubt the structure of the agency's adjudication process. 598 U.S. at 182–83. If the plaintiffs were right, their adjudications could not go forward as organized. *See id.* at 192. The same is true of a Seventh Amendment claim. If an agency brings a common law claim in an in-house adjudication, it is subjecting the respondent "to an illegitimate proceeding, led by an illegitimate decisionmaker." *Id.* at 191.

Historically, too, the Seventh Amendment guarantee of civil jury trials was adopted as a vital structural check on all three branches of government, functioning as "the surest barrier against arbitrary power." *United States v. ERR, LLC*, 35 F.4th 405, 409 (5th Cir. 2022) (quoting Luther Martin, *Information to the General Assembly of the State of Maryland*, *in* 2 The Complete Anti-Federalist 27, 70 (Herbert J. Storing ed., Univ. of Chi. Press 1981)). The ratification of the Seventh Amendment resulted from the 1787 Constitutional Convention's omission of a civil jury trial guarantee from the original Constitution. *Id.* at 409–10; Charles W. Wolfram, *The Constitutional History of the Seventh Amendment*, 57 Minn. L. Rev. 639, 656–57 (1973). This omission was one of the major objections to the Constitution during the ratification debates. *Jarkesy*, 603 U.S. at 121–22; *ERR*, 35 F.4th at 410. The Federalists asserted that the right to a jury in civil cases had not

10

been abolished and its protection could be entrusted to Congress. The Federalist No. 83 (Alexander Hamilton); *ERR*, 35 F.4th at 410; *United States v. Wonson*, 28 F. Cas. 745, 750 (C.C.D. Mass. 1812) (Story, J.); Wolfram, *supra*, at 664–65, 712 n.200; Suja A. Thomas, *A Limitation on Congress: 'In Suits at Common Law,'* 71 Ohio St. L.J. 1071, 1106 n.227 (2010). But the Anti-Federalists were understandably concerned that this trust in Congress was misplaced. *See* Wolfram, *supra*, at 664–65. This risk was unacceptable because the jury "'has been coeval with the first rudiments of civil government, that property, liberty and life, depend on maintaining in its legal force the constitutional trial by jury.'" Mercy Otis Warren, *Observations on the New Constitution, and on the Federal and State Conventions, By a Columbian Patriot*, *in* 4 The Complete Anti-Federalist 276 (Herbert J. Storing ed., Univ. of Chi. Press 1981).

The Anti-Federalists won the argument, and the Seventh Amendment was ratified. *Jarkesy*, 603 U.S. at 121–22. Indeed, *Jarkesy* described the objections to the lack of a civil jury trial guarantee as "perhaps the 'most success[ful]' critique leveled against the proposed Constitution." *Id.* at 121. Implicit in the Seventh Amendment's ratification was the rejection of the argument that Congress could determine when jury trials would be available. *See* Thomas, *supra*, at 1106 n.227. From the beginning, the Seventh Amendment was a structural protection against juryless adjudications.

**B.** **Being Subjected to the Administrative Adjudication of a Common Law Claim Cannot Be Remedied After the Fact**

"Judicial review" of a Seventh Amendment claim (i.e., a "structural constitutional claim[]") after an administrative adjudication concludes "would come too late to be meaningful." *Axon*, 598 U.S. at 191. If the respondent's claim is adjudicated outside of an Article III court without a jury despite the Seventh Amendment applying, that is a "'here-and-now injury'" suffered by the respondent. *Id.* This injury would occur even if the respondent were to win in the administrative adjudication or have a liability determination overturned through judicial review, and it "cannot be undone." *Id.*

The Seventh Amendment claim "is not about [an] order" from a non-Article III tribunal, but about the constitutionality of the adjudication itself. *Axon*, 598 U.S. at 191; *see supra* Part I.A. This circumstance is analogous to the right "'not to stand trial' or face other legal processes" that state officers possess in the qualified immunity context. *Id.* at 192. "[T]hose rights are 'effectively lost' if review is deferred until after trial." *Id.* (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). So too here. Successful Seventh Amendment claimants have a right not to undergo a juryless adjudication outside an Article III court and will lose that right entirely without a collateral challenge. *See Jarkesy*, 603 U.S. at 140. Indeed, in the context of the civil jury trial right, the analogy to an immune officer's right not to stand trial is particularly apt.

Here, the district court misconceived Lemelson's Seventh Amendment claim. To start, the court concluded that Lemelson could seek review in the court of appeals, which could "vacate the Commission's decision," JA00032, or "order[] a new trial," JA00034 (internal quotation marks omitted). But as explained above, adjudication of Lemelson's case in a juryless, non-Article III tribunal is "an illegitimate proceeding, led by an illegitimate decisionmaker." *See Axon*, 598 U.S. at 191. And as *Axon* recognized, the injury of "'being subjected' to 'unconstitutional agency authority'"—which the Court has long recognized is an injury in-and-of itself—"is impossible to remedy once the proceeding is over, which is when appellate review kicks in." *See id.* Accordingly, neither vacatur nor a new trial would remedy that injury.

The district court next attempted to distinguish *Axon*, reasoning that here "the harm accrues only if the SEC takes 'certain allegedly unconstitutional steps to injure [Lemelson].'" JA00034 (citation omitted). That is incorrect. The Seventh Amendment, in conjunction with Article III, mandates a constitutionally prescribed adjudicatory structure for the claims to which they apply: a civil jury trial in an Article III court. Adjudicatory bodies that do not have that constitutionally prescribed structure lack the power to hear such claims at all. *See Jarkesy*, 603 U.S. at 125, 127. Indeed, the SEC and the district court implicitly acknowledged this by

13

accepting the court's subject matter jurisdiction to hear Lemelson's Article III claim. JA00029; JA00042–047.

If courts do not have jurisdiction to hear collateral Seventh Amendment claims, administrative respondents will forever lose their right not to undergo juryless adjudications of their claims outside Article III courts. *Axon*, 598 U.S. at 192. Much like a proceeding before an unremovable ALJ, a proceeding before a juryless non-Article III tribunal inflicts the "'here-and-now' injury of subjection to an unconstitutionally structured decisionmaking process." *Id.* "And as to that grievance, the court of appeals can do nothing: A proceeding that has already happened cannot be undone." *Id.* at 191.

## II.    Claims Under the Seventh Amendment Are Wholly Collateral to Administrative Adjudications

A Seventh Amendment claim is, in general, wholly collateral to statutory review provisions—the second *Axon* factor—because it goes to the underlying power of the agency to adjudicate a given claim. 598 U.S. at 192–94. Constitutional challenges to an agency's power to adjudicate a claim at all, rather than challenges to "how that power was wielded" are collateral for purposes of jurisdiction. *Id.* at 193; *see also Free Enter. Fund v. PCAOB*, 561 U.S. 477, 490 (2010) (finding jurisdiction where "petitioners object to the [agency's] existence, not to any of its [] standards"). Such claims "do not relate to the subject of the enforcement actions"

14

nor do they "address the sorts of procedural or evidentiary matters an agency often resolves on its way to a merits decision." *Axon*, 598 U.S. at 193.

A Seventh Amendment claim goes directly to the underlying power of a non-Article III tribunal to adjudicate a claim because its applicability is coextensive with a claim requiring an Article III court. *Jarkesy*, 603 U.S. at 127. The two questions a court must resolve when reviewing a Seventh Amendment claim implicate neither the subject of an enforcement action itself nor procedural or evidentiary matters that agencies normally resolve. Evaluating the nature of a claim as common law, equitable, or otherwise does not require the court to look into the merit of the claim itself or its applicability to particular facts. *See Tull v. United States*, 481 U.S. 412, 417 (1987). And the applicability of the public rights exception is an existential question that does not go to the usual questions non-Article III tribunals resolve. *See Axon*, 598 U.S. at 192–93.

A.     **Whether a Claim Is Common Law in Nature Is Wholly Collateral to an Enforcement Action**

Determining whether a claim brought in an administrative adjudication has a common law analog is "'collateral' to any [] orders or rules from which review might be sought." *Free Enter. Fund*, 561 U.S. at 490. Evaluating the nature of a claim is distinct from analyzing its substantive meaning and the conduct to which it applies. Whether a claim is common law or not "ha[s] nothing to do with the enforcement-related matters [agencies] 'regularly adjudicate[].'" *Axon*, 598 U.S. at 193 (second

alteration in original). The question is simply whether the claim is "'legal in nature.'" *Jarkesy*, 603 U.S. at 122.

The category of cases that are legal in nature is broad: it includes "'all suits which are not of equity or admiralty jurisdiction, whatever may be the peculiar form which they may assume.'" *Id.* "To determine whether a suit is legal in nature . . . courts [] consider the cause of action and the remedy it provides." *Id.* at 122–23. For example, claims against state officers for rights violations under 42 U.S.C. § 1983 were common law because they "sounded in tort and sought legal relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 711 (1999). Similarly, Clean Water Act suits for civil penalties were common law actions because punitive civil monetary penalties were "a type of remedy at common law that could only be enforced in courts of law." *Tull*, 481 U.S. at 422. And *Jarkesy* reaffirmed this analysis, concluding that the authority for punitive civil monetary penalties, even in administrative adjudications, "effectively decides" that such suits "implicate[] the Seventh Amendment right." 603 U.S. at 125. As such, evaluating the nature of a claim is collateral to the actual decisions of an agency in the adjudication. *Axon*, 598 U.S. at 193.

### B.     The Applicability of the Public Rights Exception Is Wholly Collateral to the Enforcement Action

The second piece of the Seventh Amendment analysis—the applicability of the public rights exception—is also collateral to the adjudication itself. Like

analyzing the nature of the case, it has "nothing to do with the enforcement-related matters" that an agency is actually adjudicating. *Axon*, 598 U.S. at 193. Because the public rights exception "has no textual basis in the Constitution," the relevant question is whether there are "background legal principles"—in particular, longstanding historical practice—that support adjudicating a claim outside of an Article III court. *Jarkesy*, 603 U.S. at 131.

As demonstrated in *Jarkesy*, the public rights exception analysis looks entirely outside of the adjudication itself. 603 U.S. at 127–32. The Supreme Court identified six "historic categories of adjudications [that] fall within the exception": revenue collection, immigration, tariffs, "relations with Indian tribes," "the administration of public lands," and "the granting of public benefits." *Id.* at 128–30. These categories likely describe the outer limits of the public rights exception after *Jarkesy*. But even if they do not, the existence of background legal principles and historical practice justifying the litigation of securities enforcement claims—or any other category of claim—outside of Article III courts does not implicate the actual "orders or rules from which review might be sought." *Axon*, 598 U.S. at 193.

The District Court was doubly wrong to assert that Lemelson must challenge "the existence of the SEC" for his Seventh Amendment claim to be wholly collateral. JA00034. First, *Axon* does not require a plaintiff to challenge an agency's "existence" for the challenge to be collateral. District courts have subject matter

jurisdiction to consider collateral constitutional challenges, at least, where the plaintiff is "challenging the [agency's] power to proceed at all" in adjudicating a claim. *Axon*, 598 U.S. at 192. This is a question of the agency's ability to adjudicate a specific claim, not whether the agency can exist. Second, whether a tribunal has the power to proceed over a particular claim is precisely the question raised by the public rights exception. *Jarkesy*, 603 U.S. at 127–28. If a claim does not fall within the public rights exception, it cannot be litigated outside of an Article III court. *Id.* So, the ability of an agency to litigate a claim at all is at issue whenever a Seventh Amendment claim is brought against an administrative adjudication.

## III.  Seventh Amendment Claims Are Outside the Expertise of Non-Article III Tribunals

*Axon* itself decides the final factor here. In *Axon*, the Supreme Court held that structural constitutional claims "are 'outside the Commission['s] expertise.'" 598 U.S. at 194 (brackets omitted). The Court reiterated its view that "agency adjudications are generally ill suited to address structural constitutional challenges." *Id.* at 195 (quoting *Carr v. Saul*, 593 U.S. 83, 92 (2021)). And the Court explained that removal claims against the SEC "raise 'standard questions of administrative' and constitutional law, detached from 'considerations of agency policy.'" *Axon*, 598 U.S. at 182–83, 194 (quoting *Free Enter. Fund*, 561 U.S. at 491). Nor has the SEC gained newfound expertise about structural constitutional issues in the two years since *Axon* was decided.

18

The SEC has no more expertise over Seventh Amendment claims than it did over removal claims in *Axon*. Under the Seventh Amendment, courts must first evaluate whether the underlying action is a "'suit[] which [is] not of equity or admiralty jurisdiction'" (i.e., is legal in nature). *Jarkesy*, 603 U.S. at 122. Then they must determine whether the claim otherwise falls within the public rights exception. *Id.* at 127–32. These are standard constitutional law questions that "do not require 'technical considerations of [agency] policy.'" *Free Enter. Fund*, 561 U.S. at 491; *accord Axon*, 598 U.S. at 194. In fact, the argument for the lack of agency expertise is much the same as the argument for why this analysis is collateral to the agency action itself. *See supra* Part II. So, Seventh Amendment claims are outside the expertise of administrative agencies like the SEC.

In reaching a contrary conclusion, the district court reasoned that the Seventh Amendment claim "is intertwined with the development of the factual record" because a jury is required "only if there are issues of fact to be determined." JA00035 (internal quotation marks omitted). But even accepting that premise, that conflates the *existence* of fact issues with the role of the agency's "expertise" in resolving them. Only the former has any relevance to Lemelson's Seventh Amendment claim. Yet the SEC has no more expertise about *whether* fact issues exist than do Article III courts, which regularly decide whether "genuine issue[s] of material fact" exist. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). And in all events, the

19

existence of material disputes of fact does not determine whether a claim is heard in an Article III court where a jury is available; that is determined by the nature of the claim. *Jarkesy*, 603 U.S. at 122. So, the agency's "expertise" will not be "brought to bear" in resolving fact issues either way. *See Axon*, 598 U.S. at 195.

Additionally, the Judiciary has a special role in interpreting Seventh Amendment claims because they are constitutional claims regarding an amendment directed at the judiciary. Alexander Hamilton observed that constitutional "[l]imitations . . . can be preserved in practice no other way than through the medium of courts of justice" that must "void" unconstitutional acts. The Federalist No. 78, p. 524 (J. Cooke ed. 1961) (Alexander Hamilton). And the Supreme Court has asserted this role from the very beginning. Shortly after the Constitution's ratification, the Supreme Court affirmed that "[i]t is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803). *Marbury* specifically noted that where the "language of the constitution is addressed especially to the courts," the court must obey the constitution rather than a legislative act. *Id.* at 179–80. This imbues courts with a particular expertise to consider the applicability to statutory claims of the Seventh Amendment, which directs courts to convene a jury to try common law claims.

## CONCLUSION

For all of the foregoing reasons, this Court should reverse the District Court's dismissal of Lemelson's Seventh Amendment claim.

DATED: September 10, 2025.

Respectfully submitted,

/s/ *Joshua M. Robbins*
Joshua M. Robbins
Virginia Bar No. 91020
Nicholas L. Clifford
D.C. Bar No. 90027432
PACIFIC LEGAL FOUNDATION
3100 Clarendon Blvd.,
Suite 1000
Arlington, VA 22201
(202) 945-9524
JRobbins@pacificlegal.org
NClifford@pacificlegal.org

*Attorneys for Amici Curiae*

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 29(a)(5) because this brief contains 4,604 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). This statement is based on the word count function of Microsoft Word.

I further certify that this brief complies with the typeface and typestyle requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared in 14-point Times New Roman, a proportionally spaced font.


DATED: September 10, 2025.            s/ *Joshua M. Robbins*
                                      JOSHUA M. ROBBINS

## CERTIFICATE OF SERVICE

I certify that on September 10, 2025, I electronically filed this amicus brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system, which sent notification of such filing to all counsel of record.

s/ *Joshua M. Robbins*
JOSHUA M. ROBBINS